CITY OF FAYETTEVILLE *et al. v.* HUDDLESTON *et al.*

1. The municipal authorities of a city, in the absence of express legislative authority to that effect, have no power to use funds derived from the sale of an issue of bonds issued by such city for a specific purpose for another and different purpose.

2. Under the provisions of the charter of the City of Fayetteville, as contained in section 25 of the act of 1911 (Ga. L. 1911, p. 1171) the proceeds of any bonds which the City of Fayetteville is authorized to issue, "when sold, shall only be applied for the purpose for which they were respectively issued."

3. The court did not err in issuing a temporary injunction restraining the city from diverting funds derived from the sale of bonds issued by the city, which had been authorized by a vote of the qualified voters of said city for the specific purpose of installing a lighting system, and from using $7000 of this fund in the completion of a system of waterworks, although the proposed diversion has been authorized in a plebiscite by a two-thirds vote of the qualified voters.

No. 6030. FEBRUARY 17, 1928.

Injunctions, 32 C. J. p. 269, n. 23.
Municipal Corporations, 28 Cyc. p. 1598, n. 50.

Injunction.    Before Judge Searcy.    Fayette superior court. April 22, 1927.

*Sam L. Olive,* for plaintiffs in error.    *E. M. Smith,* contra.

RUSSELL, C. J.    Prior to the year 1902 the plaintiff in error was not a city.    In that year (Ga. L. 1902, p. 419) the General Assembly created the City of Fayetteville by amending the act of 1888 (Ga. L. 1888, p. 221), whereby Fayetteville had previously been a town, by striking out the word "town" wherever the same occurred in the previous charter, and inserting the word "city" in lieu thereof.    In 1911 (Ga. L. 1911, p. 1171) the charter previously granted to the City of Fayetteville was amended in several respects not now necessary to mention.    Section 25 of the act of 1911 gave authority to the city council of Fayetteville to issue bonds (among other purposes) for "establishing, enlarging, and improving a system of waterworks, a system of electric lights, or a gas system for the city."    It is declared that, "before bonds of the city shall be issued for any of the foregoing purposes, the city council of Fayetteville shall, by appropriate resolutions or ordinances, direct and provide how such bonds shall be issued, and shall specify the purpose and amount thereof."    Such elections for bonds could be called from time to time for issuing bonds for any one or more of the purposes stated in section 25, with the express proviso, however, "that the limits of the total bonded indebtedness of said city, as fixed by the constitution of the State, shall never be exceeded."    The concluding sentence of section 25 is as follows:    "Said city council is hereby authorized to negotiate and sell any of the bonds or series of bonds issued by said city, and proceeds of such bonds, when sold, shall only be applied for the purposes for which they were respectively issued."    The City of Fayetteville issued and sold two bond issues.    One was for a system of waterworks, amounting to $17,000; the other, amounting to $15,000, was for the specific purpose of erecting a system of electric lights; thus aggregating $32,000, a sum which is admitted to be only slightly less than 7 per centum of the assessed tax values of the property within the City of Fayetteville subject to taxation.    The case now before us presents the question whether the city can borrow the additional sum of $7000, not as a bonded debt, but as a loan to be repaid $1000 each year.    It is agreed that all legal requirements in giving notice, in holding the election,

in declaring the result, and in the passage of the ordinance for holding the election to borrow the $7000 otherwise than as a bonded debt, were complied with, and that the election was legal in every respect.

From the agreed statement of facts it appears "that the city council has spent all the funds realized from the sale of waterworks bonds on waterworks, and that there is now needed $7000 to complete said waterworks," and that the city council spent $5562.50 towards installing a system of electric lights. Thereafter the Georgia Utilities Company purchased from the city all the fixtures and supplies put up by said city for the sum of $5562.50, and the city council granted that company a franchise to put up and operate the electric-light system in said city. This rendered it unnecessary for the city to build an electric-light plant. The amount paid by the Georgia Utilities Company for the fixtures and franchise was placed to the credit of the electric-light fund in the treasury of said city, and one bond was paid from the electric-light fund in said treasury. It is now proposed to use $7000 of the fund to the credit of the electric-light fund in the city treasury, to make the loan of $7000 in favor of which the qualified voters of Fayetteville expressed themselves in the election just referred to. Thus is presented the question whether the city can withdraw any of the funds derived from the sales of bonds voted and issued for the specific purpose of erecting a light system and use the money for a system of waterworks or any purpose other than that which was submitted to the qualified voters of the municipality. The judge of the superior court granted an interlocutory injunction restraining, until the final hearing of the cause, the operation of the municipal ordinance authorizing the $7000 loan which was ratified by the qualified voters of Fayetteville by a two-thirds vote at an election held in compliance with all legal requirements; and the exception is to this judgment. After a careful consideration of the important questions involved in this case, we have reached the conclusion that the court did not err in holding that the city did not show itself to be within the class of cities which might increase their indebtedness to an amount not exceeding ten per centum of the assessed value of taxable property. Nor did the court err in holding that the fund which was the proceeds of a bond issue approved and authorized by the qualified voters of

Fayetteville, for the specific purpose of procuring a lighting system for that municipality, could not be diverted from the purpose designated by the people in the election.

1.   It is insisted that paragraph 1 of section 7 of article 7 of the constitution, by reason of the constitutional amendment adopted in the general election in 1918, was so changed as to entitle the City of Fayetteville to increase its bonded indebtedness to any amount less than ten per centum of its assessed taxable values. Prior to the amendment of 1918, the original paragraph of the constitution as adopted in 1877, so far as material, provided that the debt thereafter incurred by any county, municipal corporation, or political division of the State, except as in the constitution provided for, should not exceed seven per centum of the assessed value of all the taxable property therein; but that any city, the debt of which did not then exceed seven per centum of the assessed value of the taxable property·at the time of the adoption of the constitution, might be authorized by law to increase the amount of its debt three per centum upon such assessed valuation.   The amendment which was proposed by the General Assembly and adopted in the election of 1918 (Ga. L. 1918, p. 99) did not purport to deal with the subject of raising the limit of seven per centum to one of ten per centum.   In the caption the act by which it was sought to submit the proposed amendment is defined as "An act to amend paragraph 1, section 7, article 7 of the constitution of the State of Georgia, by inserting between the word 'thereof' and the word 'at,' as they occur in the tenth line of said paragraph, the following, 'voting,' so as to authorize any county, municipal corporation, or political division of this State to incur any new debt with the assent of two thirds of the qualified voters of such county, municipal corporation, or political division, voting at an election for that purpose, to be held as may be prescribed by law." We bear in mind the rule that the provision of art. 3, sec. 7, par. 8, of the constitution, with reference to conformity between the caption and the body of an act, is not applied to constitutional amendments which may be proposed from time to time by the General Assembly, for the reason that the ratification by the people is an exercise of popular sovereignty upon a matter, not of form, but of substance; and as the entire electorate of the State will consider and pass upon the matter, it is not to be presumed that

the body of the citizens are likely to be misled into hasty or ill-advised legislative action, as was the case of the act which enabled the perpetration of the Yazoo Fraud.

So we come to the body of the act, and in section 1 the words proposed to be inserted between the word "thereof" and the word "at" in the tenth line of the paragraph are as follows: "voting, provided said two thirds so voting shall be a majority of the registered voters; and provided further that all laws, charter provisions, and ordinances heretofore passed or enacted, providing special registration of voters of counties, municipal corporations, and other political divisions of this State, to pass upon the issuance of bonds by such counties, municipal corporations, and other political divisions, are hereby declared to be null and void, and the General Assembly shall hereafter have no power to pass or enact any law providing for such special registration, but the validity of any and all bond issues by such counties, municipal corporations, or other political divisions, made prior to January 1, 1918, shall not be affected hereby." Inserting these words effected no change whatever in the proportionate percentage that the bonded debt of a municipality should bear to its assessed taxable values. The amendment was designed to effect and did effect only two things. It provided that only two thirds of those voting would be sufficient to authorize a municipal debt instead of two thirds of the voters as shown by the list of registered voters of the municipality. In the second place, it provided that there should be no special registration of voters to pass upon county or municipal bonds. The evident purpose of the amendment was to render easier the process of issuing bonds, and to that end the amendment declared all laws previously passed providing special registration of voters to be null and void, and inhibited the General Assembly from passing any special registration law for elections upon bonds in the future. The only reference to the date January 1, 1918, was made in preserving the validity of bonds which had already been issued, by providing that "the validity of any and all bond issues . . made prior to January 1, 1918, shall not be affected hereby." The plain intent and meaning of the words employed in the amendment seem altogether to exclude the argument that a change was effected in the original paragraph as to instances in which the seven per centum of in-

debtedness may be increased to ten per centum.  Furthermore, the City of Fayetteville would not be affected by the amendment, because the authority to increase the debt of a city three per centum upon its assessed valuation is expressly confined, in the paragraph of the constitution as amended, to those cities whose debt did not exceed seven per centum of the assessed value of the taxable property at the time of the adoption of the constitution in 1877; and as the trial court judicially knew that Fayetteville was not a city in 1877, the clause of the paragraph authorizing an increase of three per centum upon the debt is not applicable to the plaintiff in error.  Fayetteville did not become a city until 1902, twenty-five years after the adoption of the constitution of 1877.

2.  Under the express terms of the charter of Fayetteville, the $7000 which the city council desired to take from the electric-light fund and use for the purpose of completing the waterworks system could not be diverted for that purpose.  It is true that it is stipulated in the agreed statement of facts that the qualified voters of the city, at an election regular and legal in all respects, had authorized the borrowing of $7000, which might ordinarily have authorized the municipality to have borrowed the money from itself as from any one else.  It may be possible that the General·Assembly could authorize a city to borrow from one of its departments funds for which there was no immediate use (as in this case), and, guaranteeing its repayment, use the money meantimes for some other municipal purpose.  We gravely doubt if in any instance such authorization would not be in violation of the spirit of the constitution.  But this question is not now before us for decision, for the reason that section 25 of the amendment to the charter of Fayetteville in 1911 (which seems to have been maturely considered and very carefully drawe), as above stated, expressly commands that the proceeds of any bonds which that city is authorized to issue, "when sold, shall only be applied for the purpose for which they were respectively issued."  There can, therefore, in this case be no such question considered as to whether the $5562.50 received from the sale of the electric-light system (being exactly the same sum which had been expended from the $15,000 bond issue) became general funds which the city could use for any proper purpose.  Nor can there be any issue as to whether the municipality could use the power conferred by the

act of 1925 (Ga. L. 1925, p. 177), by virtue of which the municipalities of this State can sell municipally owned public utility plants on such terms and conditions as to the municipality may seem proper. Learned counsel for plaintiffs in error does not complain of the ruling of the judge to the effect that the act of 1925 is not applicable in this case; and there is no exception to the order continuing in force the order in another case which restrained and enjoined the city council of Fayetteville from using, diverting, or transferring the money derived from the sale of the electric-light bonds for any other purpose whatever, except buying up and retiring the electric-light bonds outstanding against the City of Fayetteville, or the purchase of like securities for that purpose as by law provided. This judgment became the law of the case upon the subject of diversion; and for that reason the question as to whether the funds derived from the sale of the electric-light plant and franchise were general or special funds is not now open.

The requirement which obliges a municipal corporation, under the circumstances in this case, to forego the completion of water-works which are necessary, while having in its treasury sufficient funds to complete the necessary municipal improvement, may and undoubtedly will entail a hardship upon the community; but the first and highest duty of a court is to uphold the constitution, the organic and fundamental law of the Commonwealth, and in this view of the matter we have no option other than to affirm the judgment of the trial court.

*Judgment affirmed. All the Justices concur.*

HINES, J., concurs specially.