## DOYAL et al. v. RUSSELL.

No. 11383.  November 14, 1936.

530

*Barry Wright, Graham Wright, W. S. Mann, S. D. Hewlett, Hugh Howell, B. D. Murphy,* and *G. L. Goode,* for plaintiffs in error.

*Lanham & Parker, George S. Peck,* and *Charles S. Reid,* contra.

PER CURIAM. In logical order, the motions to dismiss the petition for want of jurisdiction of the defendants who were nonresidents of the county in which the suit was filed should be the first matters for consideration; but in the view we take of the case it is not improper to pass immediately to the merits and consider whether the petition states a cause of action, the court below having ruled upon this question and sustained the petition. Upon a fair interpretation of the petition and all amendments thereto, including the several prayers, three general conclusions are inevitable: (1) The allegations touching the determination of the Governor to operate the State government and to pay out the public funds without a general appropriation act were made solely for the purpose of showing that the suspension of Hamilton as State treasurer was not based upon sufficient cause and was illegal, and therefore that Daniel, who was appointed in his place, is not the lawful State treasurer. The plaintiff thus makes the contention that any payment of the tax money to Daniel would be illegal, and that the same would be true of disbursements by him for any purpose. (2) The petition as amended relates only to funds derived from the gasoline and kerosene tax, and, except as stated above, is based solely upon alleged diversion of such funds. It presents no contention that there is not a sufficient appropriation law authorizing actual disbursement of the funds for specified purposes, as distinguished from a mere allocation or dedication, which might not authorize disbursement without further action by the legislature. One amendment did not contain any prayer whatever, while in each of the other amendments the plaintiff prayed "that each and all of the said defendants be temporarily restrained and permanently enjoined from paying out any of the said funds except as now provided by law, and as allocated as more fully set out in the original petition." Other portions of the petition as amended could be quoted in support of the construction which we

have given to the petition, as stated above. (3) That the chief complaint is against the defendant Daniel; and that if the petition does not state a cause of action as to him, it will be unnecessary to discuss the case minutely in its relation to the other defendants. In regard to the first of the matters here stated the petition is wholly deficient for several reasons. The statute does, as the plaintiff contends, make it the duty of the oil distributors to pay the taxes to the comptroller-general, but it is also provided by law that in default of such payment the State Revenue Commission through its chairman shall issue executions and collect the tax by levy and sale, if necessary. Code, §§ 92-1407, 92-7301. It is then the duty of the State Revenue Commission to pay such funds into the State treasury. § 92-5806. So it appears from the petition that Doyal as chairman of the State Revenue Commission was merely following the law, provided he was authorized to deal in any manner with Daniel as the acting State treasurer. Upon this question it need only be said that Daniel, under the facts alleged, was at least a de facto officer. It has been held that he is the State treasurer de jure. *Daniel* v. *Citizens & Southern Nat. Bank,* 182 *Ga.* 384 (185 S. E. 696). See, in this connection, *Hinton* v. *Lindsay,* 20 *Ga.* 746 (4); *Pool* v. *Perdue,* 44 *Ga.* 454 (2); *Smith* v. *Meador,* 74 *Ga.* 416 (2) (58 Am. R. 438). "The acts of a de facto officer are valid in so far as they affect the rights of the public and of third persons having an interest in the acts performed by such officer." *Godbee* v. *State,* 141 *Ga.* 515 (2) (81 S. E. 876).

Regarding the second proposition, we merely repeat that the petition does not call for a decision as to whether the statute levying the taxes amounts within itself to an appropriation law in relation to the funds so derived, because the petition properly construed concedes this to be true as a matter of law, thus presenting no question for decision upon this subject. As to the third matter referred to in the foregoing synopsis, it follows from what has been said that the petition does not state a cause of action unless it shows a diversion of the tax funds. So the next question is whether the petition states a cause of action for a diversion of State funds. The petition alleges that Daniel is diverting the gasoline and kerosene tax money to purposes foreign to those whereunto it has been assigned and dedicated by law, averring as

much in several places, but finally not without qualification as to what is being done. In paragraph 6 of the petition it is alleged that Doyal and Daniel "are acting illegally and beyond the power of duties of their offices in seeking to divert the motor-fuel taxes hereinafter set out." Paragraph 12 is as follows: "Petitioner shows that the motor-fuel tax has been allocated by the General Assembly of Georgia (Act approved Aug. 19, 1929, Ga. Laws 1929, p. 99), four cents per gallon for the construction of State-aid roads, one cent to the several counties of this State, and one cent to an educational equalization fund. Petitioner shows, however, that the funds derived from the gasoline tax is being diverted by one of the defendants, J. B. Daniel, to other purposes and in violation of the express statutes allocating said funds to the purposes hereinbefore set forth, and that the said J. B. Daniel and Paul Doyal are co-operating to the same illegal end." Paragraph 13 alleged that the defendant Doyal "has co-operated and is co-operating and will co-operate with the other defendant, the said J. B. Daniel, to divert illegally the said gasoline taxes from the funds and purposes for which the same were levied, collected, and allocated;" while in paragraph 14 the petition is more specific, alleging "that the said J. B. Daniel, acting as an individual and without authority of office, and in violation of the law allocating said funds to the purposes aforesaid, will divert and pay the same out illegally under the proclamation above referred to, or otherwise in direct violation of the laws and constitution of this State, unless he is restrained from so doing by this court." None of the amendments were clearer than the original petition on the subject of diversion. It is a well-settled rule of construction that where both general and specific allegations are made regarding the same subject-matter, the latter will control. *Palmer Brick Co.* v. *Chenall,* 119 *Ga.* 837 (6) (47 S. E. 329); *Banks* v. *Schofield's Sons Co.,* 126 *Ga.* 667, 671 (55 S. E. 939); *O'Callaghan* v. *Bank of Eastman,* 180 *Ga.* 812, 817 (180 S. E. 847); *Reese* v. *Southern Railway Co.,* 35 *Ga. App.* 369 (133 S. E. 284).

Then, on the subject now under consideration, all that the petition can be construed to say is that the defendant Daniel "will divert and pay out [the gasoline and kerosene tax funds] illegally under the proclamation" of the Governor, "or otherwise in direct violation of the laws and constitution of this State." The allega-

tions are at least vague and uncertain and call for construction. The petition first alleges a diversion in general though unqualified terms; but later it declares by alternatives that the defendant will divert and pay out the funds under the Governor's proclamation or otherwise. If the facts were such as to warrant a more definite statement, it is unfortunate that definite allegations were not made. "Where pleadings do not make distinct and positive allegations, but are ambiguous or couched in alternative expressions, on demurrer they will be given that construction which is most unfavorable to the pleader." *Baggett* v. *Edwards*, 126 *Ga.* 463 (55 S. E. 250). Where any one of several averments alleged in the alternative is insufficient, the entire pleading is rendered bad. In other words, where two matters are pleaded in the disjunctive, one of which is good and the other not, the petition is treated as pleading no more than the latter, because it must be construed most strongly against the pleader. *Fraser* v. *Smith & Kelly Co.*, 136 *Ga.* 18 (2) (70 S. E. 792); *Central of Georgia Railway Co.* v. *Tapley*, 145 *Ga.* 792 (3) (89 S. E. 841); Anderson *v.* Minneapolis &c. R. Co., 103 Minn. 224 (114 N. W. 1123, 14 L. R. A. (N. S.) 886); 49 C. J. 97, § 91; 21 R. C. L. 451, § 15. In such case the defect may be reached by a general demurrer; whereas, if both alternatives are good in substance, the petition might be subject to special demurrer for duplicity, but would not be subject to general demurrer. *Gainesville & Dahlonega Railway Co.* v. *Austin*, 122 *Ga.* 823 (50 S. E. 983); *Central of Ga. Ry. Co.* v. *Banks*, 128 *Ga.* 785 (58 S. E. 352); *Harris* v. *Wilcox*, 7 *Ga. App.* 121 (56 S. E. 380).

This brings us to a consideration of what, if anything, was contained in the Governor's proclamation in regard to the funds about which the plaintiff is complaining. The plaintiff did not in his petition give the court a copy of the proclamation, but stated that the court would take judicial cognizance of it—which alone presents an important legal question. So far as appears from the express allegations of the petition, the proclamation merely undertook to direct how the public funds should be disbursed in the absence of a general appropriation act covering the year 1936, and there is nothing to show that the proclamation itself involved a diversion of these particular funds to any purpose other than those to which they have been allocated by law. But

assuming with the plaintiff, though not deciding, that the court must without pleading take notice of the contents of such proclamation, the case is not stronger for the plaintiff. Attached to one of the briefs is what purports to be a copy of the proclamation; and since no question has been raised as to its correctness, we will on the assumption just stated deem it sufficient here to refer to this copy as a true copy of the alleged original. The law provides that the gasoline tax of six cents per gallon "shall be distributed as follows: Four cents per gallon shall be set aside to the State highway fund, for use in the construction of the State highway system of roads, or State-aid system of roads; and one cent per gallon to the several counties as now provided by law. The one cent of tax not allocated under the terms of this law is hereby set aside to the public schools of the State for an equalization school fund: ' Provided, however, that should that portion of said tax allocated or set apart to the counties of this State not be available for any reason for such allocation to the said counties, such portion of said tax is hereby allocated and set apart to the State highway fund to be expended on the State highway system by the State Highway Board in addition to the said four cents tax already allocated to said State highway system; and provided further, that should that portion of the tax allocated or set apart to the equalization fund for the common school system not be available for any reason for such allocation to the said equalization fund, such portion of said tax is hereby allocated and set apart for educational purposes in instructing children in the common schools of this State, . . and shall be paid into the treasury of the State and there remain covered for such purposes." Code, § 92-1402. The law regarding the kerosene tax is as follows: "Each distributor of kerosene who engages in such business in this State shall pay an occupation tax of one cent per gallon; the proceeds of such tax to be covered into the general treasury. All of the subsequent regulatory provisions of this chapter, except the rate of tax, shall apply to distributors of kerosene. The tax levied under this section is hereby set aside to the public schools of this State for an equalization fund." § 92-1403. As shown above, the plaintiff did not contend in his petition that these statutes do not constitute sufficient legislative appropriations regarding the funds derived from such taxes. It is contended merely that the proceeds are being

diverted to other purposes; and when the petition is construed most strongly against him, he is complaining only of a diversion to other purposes resulting from the disbursement of such funds "under the proclamation above referred to." We have searched in vain for any words in the proclamation, shown as stated above, which would direct the State treasurer to apply these funds to any purposes except those to which they are allocated respectively by the statutes just quoted. '

While in the foregoing discussion only slight reference has been made to the plaintiff's amendments, they have been given due consideration. Only a few brief observations will be necessary to show that these amendments did not strengthen the petition. In the first and second amendments the plaintiff alleged certain facts touching the conduct and purpose of the defendants in reference to (1) evasion of a previous order of the court, and (2) the diversion of the motor-fuel tax fund. In the first place, the allegations as to the evasion of an order of the court would not remedy defects in the original petition. In the second place, the new averments in reference to the diversion of the fuel tax fund were equally as general and indefinite as any of those contained in the original petition, and were obviously not intended to allege more or to speak differently on that subject. In the third amendment the plaintiff alleged that the Governor drew a warrant for a disbursement for which no appropriation existed in law; but it was not alleged that this warrant would have the effect of diverting any of the gasoline and kerosene tax fund. As indicated previously in this opinion, the purpose of this allegation was merely to show the circumstances under which Daniel was appointed to the office of State treasurer, and it did not relate to the question of diversion. From what has been said in regard to the indefinite and alternative allegations, it is clear that the petition must stand or fall by the Governor's proclamation, in compliance with which it is contended that the defendant Daniel is illegally disbursing and misapplying the proceeds of the gasoline and kerosene tax; and since it does not appear that the proclamation itself involves an application of these funds to any purposes except those to which they have been assigned or allocated by law, the petition fails to show a diversion of such funds, and thus does not state a cause of action against the defendant Daniel. The allegations with respect

to the other defendants were even less substantial. The court erred in overruling the motions to dismiss and the general demurrer. *Judgment reversed. All the Justices concur, except*

BELL, Justice, dissenting. Where a special fund is created or set aside by statute for a particular purpose or use, it must be administered or expended in accordance with the statute, and not diverted to any other purpose; and if a public officer is about to divert the same, he may in a proper case be restrained from such illegal diversion and expenditure. *Mitchell County* v. *Cochran,* 162 *Ga.* 810 (134 S. E. 768); *City of Fayetteville* v. *Huddleston,* 165 *Ga.* 899 (142 S. E. 280); 59 C. J. 232, § 378. Does the petition contain sufficient allegations to show an illegal diversion of the gasoline tax funds, as against a general demurrer? While in paragraph 14 the plaintiff alleged that this defendant "will divert and pay the same out illegally under the proclamation above referred to, or otherwise in direct violation of the laws and constitution of this State," and while this one averment might be too indefinite and uncertain where it does not appear that the proclamation itself involved a diversion, yet in other portions of the petition it was alleged positively and without qualification that the funds derived from the gasoline tax are being diverted by the defendant Daniel to other purposes than those to which they are allocated by law, and that Daniel and Doyal are co-operating to the same illegal end. See paragraph 12 of the petition. In paragraph 13 the petition alleges that the defendant Doyal "has co-operated and is co-operating and will co-operate with the other defendant, the said J. B. Daniel, to divert illegally the said gasoline taxes from the funds and purposes for which the same were levied, collected, and allocated." There was no special demurrer calling for a more specific averment in regard to the alleged diversion, or complaining of duplicity, and as against a mere general demurrer the allegations were sufficient to show a diversion of the funds by the defendant Daniel.

Since the decision by the majority has reversed the judgment solely upon the ground that the allegations were too indefinite to show a diversion by any of the defendants, the writer will not discuss the other questions raised.