GREEN *et al. v.* PERRYMAN *et al.*

240

*J. A. Hixon* and *Hollis Fort,* for plaintiffs.

*Foley & Chappell, George C. Palmer, Martin, Martin & Snow, George R. Jacobs, Dave M. Parker,* and *G. C. Thompson,* for defendants.

BELL, Justice.   On January 30, 1935, Mrs. J. T. Green and eleven others filed an equitable petition, in one count, against the Bank of Talbotton, the American Surety Company, and the following individuals who were officers and directors of the bank: J. W. Jordan, A. J. Perryman Jr., D. B. Searcy, and L. W. Smith. The petition as twice amended was attacked by general and special demurrers filed by the several defendants. The general demurrers of the Bank of Talbotton and J. W. Jordan were overruled, and no appeal was taken by either of these defendants. The general demurrers filed by the American Surety Company, A. J. Perryman Jr., D. B. Searcy, and L. W. Smith each not only made the contention that the petition did not state a cause of action, but expressly invoked the statute of limitations. These demurrers were sustained, and the *plaintiffs* excepted. All of the defendants in the trial court were named as defendants in error in the bill of exceptions. The Bank of Talbotton moved to dismiss the writ of error as to it, upon the ground that it did not except to the overruling of its demurrer and had no interest in sustaining the judgment to which the plaintiffs excepted.

The plaintiffs instituted the action as depositors of the Bank of Talbotton, and sued as a class for the benefit of themselves and all other depositors similarly situated. They alleged that the Bank of Talbotton was organized as a banking institution on or before August 16, 1906, and that after the banking act of 1919 its operations were subject to that statute and the amendments thereto.

The bank failed and went into the hands of the superintendent of banks on March 2, 1933. The plaintiffs expressly denominated their petition as a suit in equity, for an accounting and for damages accruing to them on account of fraud and deceit, fraudulent conduct, mismanagement, negligence and misappropriation in the conduct and management of the affairs of the Bank of Talbotton by the defendants. The petition as amended may be analyzed as follows: (1) It alleged the amount that each of the plaintiffs had on deposit in the Bank of Talbotton at the time of its failure, and prayed for a judgment against the bank for each such deposit, the aggregate amount of the plaintiffs' deposits being about $25,000. (2) It sought a judgment against each of the officers and directors, because of their alleged fraud and deceit in representing to the plaintiffs that the bank was a solvent institution, and in holding it out to the public as such, with the result that the plaintiffs in depositing funds in the bank were injured and damaged in the amount of their deposits at the time the bank failed, less a stated dividend which had been paid during the process of liquidation. This phase of the case is not in question here, as the bank's demurrer was overruled, and no exception was taken to that judgment. (3) It specified many illegal and excessive loans and other unlawful transactions, with resulting loss to the bank, for which, it is contended, the individual defendants should be held liable as for breach of duty as officers and directors. (4) It was alleged that J. W. Jordan as cashier was bonded from the year 1918 to January 1, 1928, in the sum of $10,000 with American Surety Company as surety. The bond was renewed annually during this period. The petition sought recovery upon each annual bond or renewal, for the unlawful acts and defaults of J. W. Jordan as cashier and principal in the bond.

The plaintiffs concede in effect that as to the two alleged causes of action last mentioned, the superintendent of banks would ordinarily be the proper party to bring suit, but they alleged that the superintendent had failed and refused to bring any action to enforce the collection of any of "said just claims," and that by reason of this fact they as depositors had the right to sue in their own names for the benefit of themselves and others similarly situated. With respect to the relationship of each of the individual defendants to the Bank of Talbotton, the following allegations

were made: J. W. Jordan was the principal stockholder and its controlling spirit. He was also vice-president and cashier, and the "chief executive and managing officer" from the year 1918 until the failure of the bank, March 2, 1933. A. J. Perryman Jr. was a director and vice-president and the legal advisor, and Searcy and Smith were directors, during all of this period. These four, together with R. G. Jordan, who was not sued, "constituted the officers and board of directors for the complete and exclusive management" of the affairs of the bank for the period stated.

Other allegations were as follows: The bank was hopelessly insolvent for about fifteen years before its failure. "During said long period of time said managing officers aforesaid, in conducting the affairs of said bank, fraudulently held the same out to the public as a solvent banking institution, and by its false method of making and publishing statements of the condition of said bank as required by law, and by false personal statements made to the patrons of said bank on direct inquiry made to them as to the solvency thereof, and in various and divers other false ways and means succeeded in deceiving the public as to the solvency of said bank and its real financial condition during all of this time, and did by said method and means deceive your petitioners, and caused them to believe in said published statements and personal statements of the officers of said bank as to its financial condition, to their hurt and injury, in depositing their funds in said bank. . . : Said bank was rendered insolvent during said long period of time, which caused its failure, as alleged, by the many misapplications, negligences, mismanagements, wrongful and illegal uses, and illegal loans of the assets, moneys, securities, credits, and properties of said bank by its said officers, most of which were consummated by them as follows." Here the petition gave the details of more than twenty separate transactions classed by the plaintiffs as "negligences, misfeasances, malfeasances, misapplications and misappropriations of the bank's assets," from which, it was alleged, the bank sustained losses amounting to more than one hundred thousand dollars. The dates of these transactions ranged from 1916 to 1927. The petition further alleged that all of these transactions "constituted liabilities that should have and could have been collected, for the reasons herein alleged; and that the said R. E. Gormley as superintendent of banks, in charge of said

Bank of Talbotton for liquidation, failed and refused to enforce collection, or attempt to enforce collection, although he led petitioners to believe that he purposed to do so, and had them to make the necessary investigation, ascertain the particulars thereof, and report them to him for said purpose. These 'particulars of irregularities' were reported to R. E. Gormley between the dates of Sept. 30, 1933, and May 14, 1934."

Paragraph 5-1 of the petition was as follows: "It is shown and alleged that during said long period of time before said bank's failure your petitioners, as patrons of said bank, from time to time made inquiry of the officers of said bank as to the solvency and its general financial condition, when and at which time, and in reply thereto, J. W. Jordan, its cashier, 'chief executive officer,' controlling spirit, and principal stockholder, made answer in words substantially as alleged above, to wit, 'that the Bank of Talbotton was as solid and sound as the Rock of Gibraltar,' meaning thereby, and intending for your petitioners to believe therefrom, that said bank was wholly solvent and in a sound financial condition, and the said J. W. Jordan intended to convey this idea, and intended for your petitioners to believe the same, and they did so believe, and were deceived thereby. And further, on other occasions when inquiry was made of the said officers of said bank, and of the said J. W. Jordan, its cashier, about the solvency and general financial condition of said bank, reply was made by J. W. Jordan to the effect and purport that said bank was absolutely and perfectly solvent, able to respond to all of its creditors and depositors for any obligation that it had or carried; that banks were made insolvent, and broke, principally from the mismanagements of officers within rather than from outside conditions, meaning and intending to convey this idea to your petitioners, and for them to believe that said bank was perfectly solvent, absolutely responsible, and that other banks failing were failing principally because of the infidelity and illegal acts of the officers having charge of the management thereof, and that the said officers having charge and managing said Bank of Talbotton were absolutely true to its every interest, and loyal to said bank's interest in every undertaking and transaction, which did convince your petitioners of its solvency, and upon which they relied, all of which statements petitioners show were false and misleading, and by reason of which they were

led and induced to deposit their moneys in said banking institution, and to extend it credit, both by 'time certificate' and general deposits subject to check; and it is alleged and shown that said J. W. Jordan and said officers of the bank knew of its insolvency during all of said long period of time, and withheld the same from the public by the method adopted of worthless insolvent notes, and notes that were mere 'salvage,' that did not belong to the bank in the strict sense of ownership, and carried as assets property that had been sold for a long period of time prior thereto in their returns required by law; and by reason of all of which it is shown and alleged that they became, and are in law, liable to your petitioners, or rather to the Bank of Talbotton, and, on the failure of the superintendent of banks, R. E. Gormley, to enter suit and enforce collection thereof, to your petitioners, in equity, for the full amount of their loss accrued thereby as hereinafter shown." The petition had previously made similar averments as to inquiry and response, without mention of any of the defendants except in general terms, as "said officers."

The petition further alleged: "It is further shown and alleged to the court that J. W. Jordan, cashier of said Bank of Talbotton during all of the period of time covered from January 1, 1918, to January 1, 1928, consummated all of the contracts and agreements involved in all of these 'irregularities,' participated in the negotiations leading up to the consummation of the same, and reaped a personal benefit in each and all of the same; that the other officers of said bank during said period either knew the same, and ratified each and all of the same, or could by the exercise of the diligence required of them as such officers have known of the particulars of each and all of them, and failed to register their dissent to any of them. Hence it is shown and alleged that all of said officers are liable to the Bank of Talbotton for the losses accruing to the bank by reason thereof. . . It is further shown and alleged to the court, that, by reason of the fact that J. W. Jordan reaped a personal benefit from each and all of said irregular transactions, the statute of limitations [is] *tolled* as to him, and as to all of such other of the officers as reaped a benefit from said transactions, or knew of the same or could have known of the same in the exercise of due diligence. . . It is shown and alleged that the numerous 'irregularities,' negligences, mismanagements, misappli-

cations, and misappropriations of the funds, assets, securities, and credits of the Bank of Talbotton, as herein alleged, by the officers and directors thereof, constituted a damage, injury, and fraud upon said bank to the extent of the injuries sustained thereby, and rendered said bank insolvent, and by reason of rendering said bank insolvent injured and damaged your petitioners by such fraud, said Bank of Talbotton being a creditor [sic] of your petitioners to the amount of their said deposits, as alleged; and said bank being rendered insolvent by said acts aforesaid by said officers and directors makes it impossible for the bank, in the insolvent condition in which it was rendered, as alleged, to answer to your petitioners in the damages done them."

In the bond signed by the American Surety Company for J. W. Jordan, the liability of the surety was expressly made subject to the following conditions: "1. That loss be discovered during the continuance of this suretyship or within fifteen months next after its termination, and notice thereof delivered to the surety at its home office in the City of New York within ten days after such discovery. 2. That claim, if any, be submitted by the employer in writing, showing the items and dates of the losses, and delivered to the surety at its home office within three months after such discovery, and the surety shall have two months after such claim has been presented in which to verify and to make payment. In the meantime no suit, action, or proceeding shall be brought against the surety by the employer, nor after the expiration of twelve months after the delivery of such statement of claim."

According to the view which we take of the case, a decision will be required only upon the following questions: (1) Whether the writ of error should be dismissed as to the Bank of Talbotton. (2) Whether the petition stated a cause of action against the individual defendants as for personal fraud and deceit. (3) Whether the plaintiffs, in suing in place of the superintendent of banks for negligence or breach of duty by the officers and directors, are barred by the statute of limitations. (4) Whether a cause of action was stated against the American Surety Company, in view of the special conditions of the bond. These questions will be considered in the order stated.

■ There is no merit in the motion to dismiss the writ of error as to the Bank of Talbotton. The bank was a party to the case

in the trial court; and whether or not it is an indispensable party to the bill of exceptions, it is a proper party. The petition was based in part upon alleged liability of the individual defendants as for negligence and breach of duty owed to the bank by them as officers and directors and upon the bond of the cashier. As to these alleged liabilities, the plaintiffs sued in place of the superintendent of banks, alleging that this officer had failed to act. Such liabilities, if existing, would inure to the benefit of the bank as a corporate entity, and therefore it is a virtual usee. In these circumstances the bank would be interested in reversing the judgment dismissing the suit as to the four defendants whose demurrers were sustained. While an indispensable party defendant in error is one who is interested in sustaining the judgment (*Federal Land Bank of Columbia* v. *Paschall,* 180 *Ga.* 224, 178 S. E. 659), one who was a party in the court below and is interested in reversing the judgment is a proper, if not a necessary, party to the bill of exceptions. *Edwards* v. *Wall,* 153 *Ga.* 776 (113 S. E. 190) ; *Greeson* v. *Taylor,* 160 *Ga.* 392 (128 S. E. 177). The movant raises no question as to whether the bank should have been made a party plaintiff in error rather than a party defendant in error. See Code, § 6-1202. Again, the action, so far as based upon alleged liability of the other defendants to the bank itself, is necessarily predicated upon the primary liability of the bank to the plaintiffs. If the bank is not liable to the plaintiffs as creditors, they would have no right to sue, in the name of the superintendent of banks or otherwise, to enforce the alleged liability to the bank by the officers and directors or by the surety company. In this view, there was greater, if not imperative, reason for making the bank a party to the bill of exceptions. *Malsby* v. *Shipp,* 177 *Ga.* 54 (4) (169 S. E. 308).

■ Did the petition set forth a cause of action in favor of the plaintiffs as depositors as for fraud and deceit on the part of the individuals who were officers and directors? Actions of this nature have been upheld by the courts, but in such case it is necessary to show actual fraud on the part of the defendants. *Hines* v. *Wilson,* 164 *Ga.* 888 (139 S. E. 802) ; *Castlleberry* v. *Wells,* 183 *Ga.* 328 (188 S. E. 349) ; *Hill* v. *Hicks,* 44 *Ga. App.* 817 (163 S. E. 253) ; *Black* v. *Estes,* 47 *Ga. App.* 732 (171 S. E. 402). The plaintiffs alleged that the defendants as officers and directors, by

the officially published statements, held the bank out to the public as a solvent institution. The petition also contained general allegations of fraud as to all of the individual defendants. With reference to personal representations it first alleged, without particularity as to individuals, that on inquiry being made of "said officers" it was replied in effect that the bank was in a sound and solvent condition. Later the allegations in reference to inquiry and reply were repeated in substantially identical language, except that in the latter instance it was averred that, on such inquiry being made of the officers, the representations were made in response by J. W. Jordan. It is a well-settled rule of construction that where both general and specific allegations are made regarding the same subject-matter, the latter will control. *Palmer Brick Co.* v. *Chenall,* 119 *Ga.* 837 (6) (47 S. E. 329) ; *Banks* v. *Schofield's Sons Co.,* 126 *Ga.* 667, 671 (55 S. E. 939) ; *O'Callaghan* v. *Bank of Eastman,* 180 *Ga.* 812, 817 (180 S. E. 847) ; *Reese* v. *Southern Railway Co.,* 35 *Ga. App.* 369 (133 S. E. 284). It follows that as to personal representations the petition must be construed as alleging that they were all made solely by J. W. Jordan. It is not alleged that they were made in the presence or hearing of the other defendants or that Jordan was authorized by the other defendants to make a false statement.

The petition purported to account by specific allegations for the insolvency of the bank. It gave the details of many irregularities, which, it was alleged, resulted in loss and damage to the bank and rendered it insolvent. It was further alleged that all of the contracts and agreements involved in these irregularities were consummated by J. W. Jordan, and "that the other officers of said bank during said period either knew of the same, and ratified each and all of the same, or could by the exercise of the diligence required of them as such officers have known of the particulars of each and all of them, and failed to register their dissent to any of them." The allegations that the officers either knew of the unlawful transactions so executed by J. W. Jordan, and ratified them, or by the exercise of the requisite degree of diligence could have known the particulars of each and all of them, amounted to nothing more than a charge of implied notice, and did not show actual knowledge on the part of the other defendants. *Thomas* v. *Georgia Granite Co.,* 140 *Ga.* 459, 460 (79 S. E. 130). Accordingly, when

the petition is construed as a whole, and especially in view of the allegations here summarized, it can not reasonably be construed as disclosing any intention on the part of the plaintiffs to allege that Perryman, Searcy, and Smith had actual knowledge of the insolvency of the bank at the time of the published statements, or to charge them with actual fraud in reference to any of the transactions or representations upon which the action is founded. *Fraser* v. *Smith & Kelly Co.,* 136 *Ga.* 18 (2) (70 S. E.. 792) ; *Doyal* v. *Russell,* 183 *Ga.* 518 (2-4), 534 (189 S. E. 32). It follows that the petition did not state a cause of action as for fraud and deceit alleged to have been perpetrated upon the plaintiffs by Perryman, Searcy, and Smith as individuals. In this view it is unnecessary to determine whether if a cause of action upon this ground had been sufficiently alleged, it would have been barred by the statute of limitations.

■ We consider next the question whether the action as based on alleged liability of the individual defendants for a breach of duty which they owed to the bank as officers and directors was barred by the statute of limitations. For any such negligence or breach of duty they would have been liable, not directly to the plaintiffs, but only to the bank itself, and the superintendent of banks would ordinarily have been the proper party to sue. *Hinton* v. *Mobley,* 167 *Ga.* 60 (144 S. E. 738) ; *Jackson* v. *Stallings,* 169 *Ga.* 176 (149 S. E. 902) ; *Hill* v. *Hicks,* 171 *Ga.* 192 (154 S. E. 882). The plaintiffs alleged, however, that the superintendent had failed and refused to act, and for this reason they claimed the right to sue for themselves and others similarly situated. Since it appeared from the petition that all of the alleged irregularities occurred more than four years before the suit was filed, if the action had been brought by the superintendent himself it would have been barred by the statute. *Mobley* v. *Faircloth,* 174 *Ga.* 808 (164 S. E. 195, 82 A. L. R. 1201). The plaintiffs in electing to sue in his stead are necessarily subject to the same limitation. The petition contained nothing to show that the superintendent had been deterred by fraud of the defendants from instituting the action, so as to toll the statute. Code, § 3-807; *Anderson* v. *Foster,* 112 *Ga.* 270 (37 S. E. 426) ; *Maxwell* v. *Walsh,* 117 *Ga.* 467 (43 S. E. 704). The court did not err in sustaining the general demurrers of Perryman, Searcy, and Smith, in which the statute of limitations was expressly invoked.

4. Several different periods of limitation have been discussed by counsel with reference to the claim against the American Surety Company; but this defendant also contended that the petition failed to show any liability against it, for the reason that it did not appear that the special conditions of the bond were complied with. In our opinion, this point is well taken and furnishes a conclusive reason why the judgment should be affirmed as to this defendant, regardless of other questions. The plaintiffs contend that the contract should be treated as a statutory bond, and therefore that the special conditions should be ignored in determining the liability. It is provided by statute: "Whenever any officer, required by law to give an official bond, shall act under a bond which is not in the penalty payable and conditioned, or not approved and filed as prescribed by law, such bond shall not be void, but shall stand in the place of the official bond, subject, on its condition being broken, to all the remedies, including the several suits, which the persons aggrieved might have maintained on the official bond." Code, § 89-419. J. W. Jordan, the principal in the bond here under consideration, was an officer and director of the bank, and not a public official within the meaning of the foregoing section. It follows that decisions like *Dedge* v. *Branch,* 94 *Ga.* 37 (20 S. E. 657), and *American Surety Co.* v. *Googe,* 45 *Ga. App.* 108 (163 S. E. 293), are not in point. While the bond may still be described as a statutory instrument, in that the banking law requires that the cashier, among others, shall give bond, the important question is, what does the statute provide in reference to the particular subject? The present law declares that "the amount of the bonds of the cashier and other officers and the conditions thereof shall be subject to the approval of the superintendent of banks." Code, § 13-2010. So, as to this type of bond, not only the amount but the "conditions thereof" shall be subject to the approval of the head of the State banking department. It is true that such power of approval was not conferred upon the superintendent till the passage of the act of August 21, 1922 (Ga. L. 1922, p. 68) ; but at the date of the original bond involved in this case the law made it the duty of the board of directors to require a bond of the cashier, without in any manner prescribing the conditions thereof. The conditions, therefore, were necessarily left to the board of directors; and such continued to be the law

until the passage of the act of 1922, supra, by which the amount and conditions were made subject to the approval of the superintendent of banks. Civil Code of 1910, § 2304; Ga. L. 1919, p. 196; Ga. L. 1920, p. 107. It is thus seen that the conditions of bonds of this class are not prescribed by statute, as is true of some other bonds required by law. Compare Code, §§ 23-1705, 23-1706, 89-402; *Southern Surety Co.* v. *Dawes,* 161 *Ga.* 207 (130 S. E. 577); *United States Fidelity & Guaranty Co.* v. *McCurdy,* 180 *Ga.* 683 (180 S. E. 633).

Since the petition contains no allegation to the contrary, it must be assumed that the board of directors, and the superintendent, within the times of their authority respectively, performed the duty imposed upon them by law to examine the conditions of this bond and its renewals, and approved the same. *Connolly* v. *Atlantic Contracting Co.,* 120 *Ga.* 213 (2) (47 S. E. 575); *Loudermilk* v. *Stephens,* 126 *Ga.* 782 (55 S. E. 956.); *Ponder* v. *Shumans,* 80 *Ga.* 505 (3) (5 S. E. 502); *Scott* v. *McDaniel,* 64 *Ga.* 780 (3). But, regardless of this, the plaintiffs are suing upon the bond as a contract between the bank and the surety company, and must take it as they find it. They can not choose to rely upon a part of it to the exclusion of the remainder, except as to such terms, if any, as are unlawful and could not have been approved by the proper authority. The bond under consideration contained the following as conditions of liability: "1. That loss be discovered during the continuance of this suretyship or within fifteen months next after its termination, and notice thereof delivered to the surety at its home office in the City of New York within ten days after such discovery. 2. That claim, if any, be submitted by the employer in writing, showing the items and dates of the losses, and delivered to the surety at its home office within three months after such discovery, and the surety shall have two months after such claim has been presented in which to verify and make payment. In the meantime no suit, action, or proceeding shall be brought against the surety by the employer, nor after the expiration of twelve months after the delivery of such statement of claim." From what has been said, these conditions can not be ignored or read out of the contract, but must be treated as valid and given effect according to their terms. As in case of the alleged liability considered in the preceding division, the plaintiffs are

suing on this bond in right of the superintendent. In thus proceeding they have no better ground of complaint than the superintendent would have had. The superintendent himself could not have recovered on this bond without showing compliance with its terms. It not appearing from the allegations that any conditions were complied with, the petition failed to state a cause of action against the surety company. These conclusions, we think, are supported by the following decisions: *Alexander* v. *Ison,* 107 *Ga.* 745 (33 S. E. 657) ; *Mayor &c. of Brunswick* v. *Harvey,* 114 *Ga.* 733 (40 S. E. 754) ; *Third National Bank of Columbus* v. *Fidelity & Deposit Co.,* 145 *Ga.* 123 (88 S. E. 584) ; *Union Dry Goods Co.* v. *National Surety Co.,* 181 *Ga.* 848 (184 S. E. 610). Accordingly, the court did not err in sustaining the general demurrer of the surety company, based upon the ground that the petition did not state a cause of action.

*Judgment affirmed. All the Justices concur.*