BANK OF JONESBORO *v.* CARNES *et al.,* executors.

No. 12551. MARCH 10, 1939.

*Hirsch & Smith* and *A. S. Clay,* for plaintiff.

*Crenshaw, Hansell & Gunby, John H. Boman Jr.,* and *O. J. Coogler,* for defendants.

REID, Chief Justice. W. T. Sims owed the Bank of Jonesboro certain notes on which Hutcheson was security. The notes matured in 1910. At the time these notes were executed Hutcheson was one

of the directors of the bank, and continued as such until the time of his death. From January, 1923, to the date of his death he was also a vice-president. The notes were never renewed or paid. From time to time Hutcheson told his associate directors and officers of the bank that he would pay them; and finally, at the instance of the State banking authorities, they were charged out of the bank's current assets at a meeting of the directors in 1920, in which meeting Hutcheson participated. After Hutcheson's death his executors found among his papers certain writings which in effect stated to his executors that he desired these notes paid from his estate, with some adjustment as to interest, referring to them as notes "outlawed" by the statute of limitations. Suit was brought on the notes, upon allegations that Hutcheson, and consequently his executors, were estopped to assert the bar of the statute of limitations, by reason of these assurances by him both before and after the statute had run; and that this was true by reason of the relation he sustained to the bank in his capacity as director and officer. The allegation was made that the bank, through the other directors and officers, had relied upon these assurances. The Court of Appeals in its decision held that these facts alleged were not sufficient to prevent the operation of the statute, and reversed the lower court's ruling against defendant's demurrers raising this question. This court granted the writ of certiorari.

1. It is not contended that there was on the part of Hutcheson any such conduct as is contemplated by the Code, § 3-807, which declares: "If the defendant, or those under whom he claims, shall have been guilty of a fraud by which the plaintiff shall have been debarred or deterred from his action, the period of limitation shall run only from the time of the discovery of the fraud." Nor is it contended that the statute would fail to operate, by virtue of § 3-713, which declares: "Subsisting trusts, cognizable only in a court of equity, are not within the ordinary statutes of limitation; but in all cases equity will consider the lapse of time in decreeing an account, and where, from it and other circumstances, it would be inequitable, any relief will be refused." It is admitted that Hutcheson was not such a technical trustee as to whom, by the terms of this section, the statute would not apply. It is also admitted that there was no sufficient or valid new promise to pay the debt, the writings referred to above never having been delivered to the

plaintiff or any one for it, but were merely found among his papers after his death. We say, therefore, that the sole question is whether or not there was such conduct shown on his part as would require a court of law to hold that he was estopped to plead the statute. It is contended by the plaintiff that he was so estopped, although his conduct could not be said to amount to moral fraud. Counsel argue this from the fact of his relationship to the bank, it being, with reference to the assets of the bank, his duty to conserve and collect them. Counsel earnestly and very plausibly contend that this relationship was of a fiduciary character, and that the other directors and officers of the bank, being lulled into a sense of safety by his promises to pay the notes, and relying upon them, were thus misled to the bank's injury, and therefore that the case, while not measuring up to the standards fixed by the rules heretofore applied where the party affected was either guilty of fraudulent conduct or stood in a position of a technical trustee, falls into another classification which would embrace those cases where it would be merely inequitable to allow the limitation statute to be interposed. The suit is not against the director for violation of his duties as such. It is upon the notes themselves. Limitations against actions for the breach of directors' duties in the management of the bank's affairs have been consistently held to run from the time of the breach, even in cases where a right of action was not known to exist by those (other than the wrong-doer) who were in control of the bank's management, until long after the statute had run. *Mobley* v. *Faircloth,* 174 *Ga.* 808 (164 S. E. 195, 83 A. L. R. 1201) ; *Council* v. *Brown,* 151 *Ga.* 564 (107 S. E. 867) ; *Green* v. *Perryman,* 186 *Ga.* 239 (2) (197 S. E. 880) ; Anderson *v.* Gailey, 33 Fed. (2) 589. It is to be borne in mind that the claim is not made here that the statute was tolled, or that Hutcheson came under one of the statutory exceptions; but that the person who ordinarily might assert the limitation is here estopped from doing so. But in the end the result will be no different if the right rule is applied. Finally it is a question whether under the facts the claim may be barred as between the parties. Upon an examination of a vast number of Georgia cases dealing with the many situations where parties have sought exemption from the statute, we reach the general conclusion that our courts have been very careful to hold litigants strictly to its terms, and have made few judicial ex-

ceptions to its operation, preferring, except from "invincible necessity," to allow only those expressly provided by statute. To see how closely this course has been followed, we may as an instance examine the case of *Moore* v. *Moore,* 103 *Ga.* 517, 526 (30 S. E. 535), where, although the exception was sought in equity, Mr. Justice Little, in discussing the extent to which equity would conform to the statute law in respect to limitations, said: "The subject-matter of the present action is a promissory note, to the obligation of which the bar of the statute had become complete, prior to its institution; and the court had no power to remove the bar merely because of a mutual mistake on the part of the parties as to the legal effect of the entry of credit made on the note. In order to constitute a new promise so as to relieve the bar, or start the statute afresh, the law requires either an entry in the handwriting of the debtor, or, if in the handwriting of another, that such entry be subscribed by the debtor himself, or by some one duly authorized by him to do so. If this requirement is not met, equity can not, as against the bar of the statute, reform the entry merely because the parties labored under the impression that the entry actually made was legally sufficient. Statutes of limitation are considered as beneficial and resting on principles of a sound public policy, and as not to be evaded except by the methods provided therein; indeed, they are now termed statutes of repose, and are regarded as essential to the security of all men. 1 Wood on Limitations (2d ed.), § 4. And courts can not engraft on such statutes exceptions not contained therein, however inequitable the enforcement of the statute, without such exceptions, may be. Board Freeholders *v.* Veghte, 44 N. J. L. 509. In the language of Stephens, J., in the case of *Adams* v. *Guerard,* 29 *Ga.* 651 [76 Am. D. 624] : 'I apprehend there is no case, certainly no case was produced in this argument, where a court of equity has relieved a party from the operation of the statute, where the bar had attached, before the case was brought in some shape into a court of common law or the court of equity. Courts of equity do not hesitate to protect a right which has become barred by the statute of limitations during the pendency of the same subject-matter in the court of equity; but to relieve from the bar where it has attached, before it is introduced into either court, would be to set the statute aside.' A mistake of law as to the requisites of a new promise, not being

an exception to the running of the statute, affords the court no discretion, but on an application for the interposition of equitable principles it is bound by the letter and spirit of the statute in the same manner as a court adjudicating on pure legal principles is bound; and therefore no error was committed in dismissing the petition upon demurrer setting up the bar of the statute as shown on the face of the pleadings."

In *Weaver* v. *Davis,* 2 *Ga. App.* 455, 462 (58 S. E. 786), Judge Powell, for the Court of Appeals, said: "We will only add that it is a general rule that limitation laws are subject to no exceptions, unless expressly provided. Notwithstanding this rule, a limited class of exceptions not provided by statute, but arising out of invincible necessity, are universally recognized. 19 Am. & Eng. Enc. Law (2d ed.), 212 et seq. Exceptions of this latter class arise where such a state of affairs exists as to render it legally impossible for the plaintiff to sue within the time limited. Of this class are those cases wherein the plaintiff is prevented from exercising his remedy by a paramount power, as injunction or other process of a court, direct or indirect legislative action, the death of either of the parties, the abolition of a city's charter (as to suits by its creditors), the existence of a state of war, non-existence of a court wherein the suit may be brought. Absence of the defendant from the State or beyond the seas has never been regarded, either at common law or in American jurisprudence, as such an exception. An examination of the authorities cited by the defendant in error will show, that while the Supreme Court in these cases recognized the judicial exceptions as applicable to the statute of 1869, it has never, except in certain mere statements obiter, recognized any other exceptions." See also *Cain* v. *Seaboard Air-Line Ry.,* 138 *Ga.* 96 (74 S. E. 764). We cite these discussions only to give the background to which we must look for authority to apply estoppel in circumstances other than those to which the plaintiff admits its case does not conform. Statutes of limitation have in many discussions been described as statutes of "repose." They are intended not alone for the benefit of the party in whose favor they have run, but are also for the general public good. They fix a time within which controversies must be set at rest, and prevent injustices where parties and witnesses have died, and other evidence lost in the passing of time and events. Adherence to them sometimes brings harsh and what may seem to be inequitable results.

In other jurisdictions there have been many statements as to different circumstances which might prevent a defendant from claiming the statute of limitations as a bar. They have usually appraised these circumstances as amounting to "estoppel." The conditions held to amount to estoppel have not always been limited to those which could be grounded only in fraud of the character dealt with in our Code, § 3-807. But an examination of them, including those cited in plaintiff's brief, discloses that in nearly every instance there was either a new written promise to pay, or its equivalent, or some substitute which may have been a course of conduct that would mislead or deceive the holder of the right of action. At least, running through virtually all of those examined and to which attention has been called, there was some actual representation or inducement clearly intended to cause the withholding of suit, or a change of position to the detriment of the person in whom the right of action stood. For instance, in Quanchi *v.* Ben Lomond Wine Co., 17 Cal. App. 565 (120 Pac. 427), relied upon in support of the position of the plaintiff in the present case, we find that the court went no farther than to say that where an obligor requested and obtained an extension of time, and the extension was granted at his instance and upon consideration of an increased rate of interest, securing thereby the payee's promise to forbear suing on the note, he was estopped from availing himself of the defense of limitation. So, in M., K. & T. Ry. Co. *v.* Pratt, 73 Kan. 210 (85 Pac. 141, 9 Ann. Cas. 751), the estoppel dealt with was held based upon a promise that the matters in controversy might abide the result of another litigation, pending which the statute of limitations had run, and after which the party seeking the adjudication in the other litigation was refused the right to set up the plea of limitation. In Kraus *v.* Morris (Tex. Civ. App.), 245 S. W. 450, the court dealt with an action against a tenant who pleaded the two-year statute of limitations and who it was shown procured several extensions of his term of tenancy on the faith of his promise to pay. It was sought to show that he agreed to pay interest on the deferred debt; but the court said there was not sufficient evidence to authorize such a finding, and that "the fact that the deferred debt bears interest, either by agreement or by operation of law, is sufficient consideration to support an extension agreement of this character." The court held that since

the time had been extended at his request, and he had been indulged and further credit had been extended to him upon the faith of his renewed promise of payment, he was estopped to plead limitations "against those who had thus been lulled into inaction by his promises." This case might be said to support in principle the view of the plaintiff; but in our opinion its facts make a much stronger case than those with which we are now dealing.

Likewise, in Schroeder v. Young, 161 U. S. 334 (16 Sup. Ct. 512, 40 L. ed. 721), relied upon by the plaintiff, the estoppel asserted against the party seeking to set up the statutory period of redemption had not come about merely upon a promise and a statement that the time to redeem would not be insisted on, but also involved charges of fraud which would be provided for in this State under the Code, § 3-807. So, in Oliver v. U. S. F. & G. Co., 176 N. C. 598 (97 S. E. 490), we find not only that were there continuing promises to pay, but that it was claimed that the commencement of the action had been delayed at the request of the general agent of the other party, and that it had been delayed because the plaintiffs were led to believe by conduct and promises of the opposing party that the amount due would be paid as soon as certain other litigation was adjusted, etc. It is true that in this case, relied upon strongly by plaintiff, the court quoted from other cases and texts which contain general statements such as that taken from M., K. & T. Ry. Co. v. Pratt, supra, and quoted approvingly also 17 R. C. L. 884, to the same general effect, and to the further effect that even though the party has not intended to mislead, he will be estopped if his statements or contentions are such as would be calculated to induce the other party, or to mislead the creditor who acts upon them in good faith. But in this connection we may say there is further found in 17 R. C. L. 885, § 243, the statement of another rule declared as follows: "And in general it is said that a defendant is not estopped to plead the statute of limitations, unless it can be fairly said that he is responsible for deceiving the plaintiff, and inducing him to postpone action upon some reasonably well-founded belief that his claim will be adjusted if he does not sue. Or, as it has been declared, the cases of estoppel seem to be confined to those instances where an intentional or negligent deception is involved." This note in R. C. L. refers to Klass v. Detroit, 129 Mich. 85 (88 N. W. 204). We find in that case that

Mr. Justice Hooker, of the Supreme Court of Michigan, gave a very full statement, a part of which it may be well to set forth: "It is a legal maxim that nothing can interrupt the running of the statute of limitations, and it is commonly stated without any qualifications, although the courts have engrafted upon statutes of limitation an exception based upon estoppel. This seems to be limited to cases involving an intentional or negligent deception, and the remedy used to be a bill in equity to enjoin the pleading of the statute." Citing Holloway v. Appelget, 55 N. J. Eq. 583 (40 Atl. 27, 62 Am. St. R. 827) ; 12 Am. & Eng. Enc. Law, 719. After some further review of the authorities on the subject, giving instances both where estoppel has been applied and where it has been held inapplicable, it was said: "It is apparent from the foregoing that the usual rule pertaining to estoppel would be applicable in such cases, and that the defendant will not be precluded from availing himself of such defense unless it can be fairly said that he is responsible for deceiving the plaintiff, and inducing him to postpone action upon some reasonably well-grounded belief that his claim will be adjusted if he does not sue."

In the instant case, if anything takes the plea of the statute out of the normal rule, it is, as contended by the bank's counsel, the fact of Hutcheson's relation to the bank during the period he was dealing with it in reference to the notes sued on. We are of the opinion that the facts stated do not create an estoppel which we can recognize as sufficient to prevent the normal operation of the statute. It does not appear that Hutcheson sought an extension, or withdrawal of any suit, or indeed that suit was ever actually proposed or threatened. There was no agreement on his part not to plead the statute, and no express request for indulgence. Nothing appears except that he sat among his associates on the board of directors and at times discussed the notes and stated he would pay them. He was of course bound to pay them. His associates in dealing with him with reference to his own obligations were dealing at arm's length and as if he were a stranger to the board (Reed v. West Loan & Trust Co., 22 Ga. App. 397, 95 S. E. 1002; Peoples Bank of Talbotton v. Exchange Bank of Macon, 116 Ga. 820, 43 S. E. 269, 94 Am. St. R. 144) ; Carl S. Strickland Co. v. Union Banking Co., 42 Ga. App. 645 (3) (157 S. E. 115), and cit.), and while they may, as alleged, have had confidence in his integrity

and have believed that he would pay them, yet they as he knew the statute was running. They allowed it to run. They could easily have secured a promise not to plead the statute, or a new written promise to pay. It was their duty to collect the note as well as his duty to pay it. "The doctrine of estoppel is not applicable for the protection of one who has suffered loss solely by reason of his own act or omission." *Exchange National Bank of Rome* v. *Alford,* 187 *Ga.* 60 (200 S. E. 128). There was no concealment by Hutcheson, no deception. His promises to pay, in so far as made before the statute ran, added nothing to his written promises which they already had. Those made afterwards could impart no life to the notes as enforceable undertakings. The writings found among his papers, while indicating good intentions on his part, do not, as we see it, strengthen the plaintiff's case. They are not relied on as a binding promise, and are set forth only by way of inducement. Some cases cited in other jurisdictions announce principles which, if applied here, would prevent the operation of the statute; but in most of those which seem to so hold, we find circumstances much stronger, and in many of them conduct or transactions which due to the particular relation involved could be said to amount to moral fraud. The element of estoppel is involved in all of the circumstances which prevent the operation of the statute and which sometimes bring about a tolling of it. It is here contended that to hold as we are holding would not allow estoppel in such cases except for fraud. What we now hold is that neither the conduct nor the relationship out of which it grew is sufficient in law to set up such an estoppel, and that the statute must be applied, because we do not believe that courts of law are justified in reading into the law exceptions not contained in it, nor do we think they may nullify the statute simply because they think it inequitable to apply it in a given case. It would unduly extend this opinion to discuss and differentiate the many cases from foreign jurisdictions cited in the briefs and examined by us; but we think it may fairly be stated that running through virtually all of them which have failed to apply the statute will be found an element of deception, express misrepresentation, or circumstances which could be called by no name other than fraud.

*Judgment affirmed. All the Justices concur, except Jenkins, J., who dissents.*

## 804

DUCKWORTH, Justice. I concur in the rulings stated, and in the judgment rendered. But I think a proper application of the rule in *Central of Ga. Ry. Co.* v. *Yesbik,* 146 *Ga.* 620 (91 S. E. 873), would require a decision that the certiorari was improvidently granted.