[Civ. No. 3850. Second Appellate District, Division Two.—June 23, 1922.]

## GLADYS CORISON, Appellant, v. LYDIA R. WILLIAMS et al., Respondents.

[1] ADOPTION—ORAL AGREEMENT—SPECIFIC PERFORMANCE—EVIDENCE.—Where a petition for adoption consummated in 1903 did not attempt to go beyond the requirement of section 226 of the Civil Code, which, in effect, only required that the adopted child should be treated like an ordinary child of the adopting person, the adoption papers therein did not constitute such a written agreement as to exclude evidence of an oral agreement alleged to have been made by the adopting persons at the time of the adoption, in an action to compel specific performance of the latter agreement.

[2] ID.—SPECIFIC PERFORMANCE—EVIDENCE—FAILURE TO CALL FATHER —FINDINGS.—In an action to compel specific performance of an oral agreement alleged to have been made by the adopting persons at the time of adoption, where the only evidence offered to prove the making of such agreement consists of oral admissions against interest made by the adopting persons, and the plaintiff fails to call as a witness her father, the only living person who could tell of the final agreement between himself and the adopting persons, the court is justified in finding that the alleged oral agreement was not consummated, notwithstanding the defendants introduce no evidence upon the subject.

[3] ID.—SUPPRESSION OF EVIDENCE—PRESUMPTION—FINDINGS.—It is to be presumed under subdivision 5 of section 1963 of the Code of Civil Procedure, that evidence willfully suppressed would be adverse, and this factor may be considered, wherever it applies, in passing upon the question whether there is a conflict of evidence or whether there is evidence to support a particular finding of fact.

[4] ID.—PETITION TO MAKE CHILD LEGITIMATE HEIR — RIGHT TO INHERIT.—The fact that the petition for the adoption of plaintiff, in addition to complying with the requirements of section 226 of the Civil Code, alleged that the petitioners desired to make her their "legitimate" heir only put her in the same place in their family which a child of their blood would have occupied, and did not give her a contract right to succeed to their property at their death.

APPEAL from a judgment of the Superior Court of Los Angeles County. John W. Shenk, Judge. Affirmed.

The facts are stated in the opinion of the court.

1. Specific performance of contract to leave property to adopted child in consideration of his living with promisor, note, 44 L. R. A. (N. S.) 760.

Arthur W. Eckman and Wm. B. Himrod for Appellant.

G. P. Adams and W. W. Orme for Respondents.

WORKS, J.—From the time of her birth until in her eighth year plaintiff bore the name of Nina C. Hunt. At the time when she reached the age mentioned she was adopted by Jerome Troy and Grace A. Troy, husband and wife, and acquired the name of Gladys Troy. After arriving at maturity she became, and she is now, the wife of John D. Corison. This action was instituted by plaintiff to specifically enforce an agreement which she alleges was made in her favor by Mr. and Mrs. Troy at the time of her adoption. Both of the Troys were deceased when the action was commenced. Lydia R. Williams was made a defendant personally because Mrs. Troy in her lifetime had conveyed to the former certain of her property, one of the purposes of the action being to set the conveyance aside. Mrs. Troy also made a will in favor of Mrs. Williams. Defendants had judgment and plaintiff appeals.

The formal adoption of appellant was preceded by certain conversations between the Troys, on the one hand, and her father, David E. Hunt, and her grandparents, Mr. and Mrs. Fleming, on the other, the mother of appellant, who was a daughter of the Flemings, having died some time before the negotiations looking toward the adoption had commenced. It is alleged in the complaint that these negotiations culminated in an oral agreement that, if they were permitted to adopt appellant through Hunt's consent to the adoption, the Troys "would leave to the plaintiff at their deaths all of the property which they then had, or which they might accumulate, or of which they might become possessed." The trial court found that this averment was untrue and appellant contends that the finding is without support in the evidence.

[1] At the trial the evidence as to the oral agreement went in over respondents' objection, their contention being that the formal adoption papers constituted the only agreement between Hunt and the Troys and that the oral negotiations between them could not be received, as they tended to vary or add to the terms of the written agreement. That ground is now insisted upon in support of the contention that the disputed finding of the trial court should be upheld. If this position is well taken the evidence of

the oral agreement should have been excluded. Upon that theory the finding would be proper, as the record would in effect show no evidence to support the alleged oral agreement. The adoption of appellant occurred in the then territory of New Mexico, but no claim is made that the law of that jurisdiction concerning adoptions was different from the law of California on the same subject. Counsel on both sides therefore correctly argue the cause upon the presumption that the law of the territory was identical with the law of this state as it stood in 1903, when the adoption was consummated. At that time section 226 of our Civil Code, after directing that adoption should be made pursuant to petition addressed to the superior court, further provided: "The person adopting a child, and the child adopted, and the other persons, if within or residents of this state, whose consent is necessary, must appear before the judge of the superior court of the county where the person adopting resides, and the necessary consent must thereupon be signed, and an agreement be executed by the person adopting, to the effect that the child shall be adopted, and treated in all respects as his own lawful child should be treated." The petition for the adoption of appellant alleged, considering only so much of it as may by any possibility bear upon the point now under consideration, "That said declarants [the Troys] desire to adopt said child for the purpose of giving her a home with them, of raising her as if she were their own child, and making her their legitimate heir, and giving her their name." The consent of Hunt to the adoption is merely to the effect that "he hereby consents to the adoption of his said child" by the Troys "as set out in their declaration and application herein," and the order of the court sanctioning the adoption casts no particular light on the subject. We cannot indorse the view that these adoption papers constitute such a written agreement between Hunt and the Troys as to call for the exclusion from evidence of an oral contract connected with the subject. It will be noted that section 226, as it stood in 1903—and, in fact, it has not been changed since in that respect—required only as to the matter of contract that the party adopting should execute an agreement "to the effect that the child shall be adopted, and treated in all respects as his own child should be treated." We do not mean to say that promises taking

a wider range in a petition for adoption either could or could not be enforced, as the question is not before us. We do say, however, that the petition in this instance shows no more than an attempt to comply with the statute, notwithstanding the use in it of the clause, "making her their legitimate heir," as to which expression we shall have more to say in discussing another point presented by appellant. As the statute required nothing, in effect, but an agreement that an adopted child should be treated like an ordinary child of the adopting person, and as the petition for adoption did not attempt to go beyond the requirement of the enactment, there is no reason why Hunt and the Troys, entirely apart from the terms of the petition for adoption, might not have made an enforceable agreement concerning the future welfare of appellant. Such statutes as section 226 "prescribe precisely what is essential to accomplish adoption without reference to what other understandings may have been had between the parties. If others there have been, they have no place in the articles of adoption, as such, which aim only to put the minor in the same relation legally to the adoptive parents as though their offspring" (*Horner* v. *Maxwell,* 171 Iowa, 660 [153 N. W. 331]. See, also, *Strakosch* v. *Connecticut T. & S. D. Co.,* 96 Conn. 471 [114 Atl. 660]). We conclude that the trial court committed no error in receiving evidence of the alleged oral agreement.

[2] Still dealing with the same finding of the trial court, we have now to determine whether there was a conflict of evidence concerning the oral agreement and whether the finding can be sustained upon that theory. No evidence upon the question was offered by respondents, and appellant insists that the trial court was concluded by the evidence presented by her and that no finding was possible except that the agreement was made as pleaded. When the negotiations for the adoption of appellant were opened by the Troys, she was residing at Raton, New Mexico, with her grandparents, the Flemings, her mother being deceased, as already remarked, and her father being at some distance from Raton under employment with a railroad company. Together with an indication by the Troys of their desire to adopt the child, her grandparents both testified to expressions used in their presence by the would-be adoptive parents, but without the presence of the father, tending to

show that if the adoption were consented to they would leave all their property to appellant. Nothing was concluded on the subject, however, nor could there have been, as the grandparents were powerless to enter into an agreement on the subject, the surviving parent being the only one who could give consent to the proposed adoption (Civ. Code, sec. 224). Moreover, and aside from this state of the law, Fleming testified: "I talked with Mr. Troy and told him he [Hunt, the father] would come up there and he would talk to Mr. Troy himself and see about it, and I think that is all I told him, that he would come up and he would talk to Mr. Troy himself." The evidence shows without dispute that Hunt did come to Raton and that he had one or more conversations with the Troys, or with one of them, upon the subject of the proposed adoption, and that both Troy and his wife and Hunt were in court at the time the adoption was consummated. We are pointed to no showing in the record that any witness who testified was present at any conversation between Hunt and the Troys, except that a Mrs. Eaton testified, the italics being ours, "I heard Grace Troy say in the presence of Mrs. Fleming and Mr. Hunt *before the adoption took place:* 'I expect to take her in my home and give her my love. I will school her, and I am going to take her to California to live, and after that we will travel, and at the end of my life she is to have all my earthly possessions.'" Mrs. Fleming, however, did not testify to this statement. Her testimony, on the contrary, contradicts that of Mrs. Eaton, for she said, "I don't think he [Hunt] ever met Mrs. Troy." It is certain that no person who took the witness-stand at the trial was present in court with Hunt and the Troys when the adoption was concluded. Hunt was not produced as a witness, nor was his deposition taken, although both appellant and the Flemings knew of his whereabouts. Several witnesses testified to statements made by the Troys, after the adoption was perfected, to the effect that they expected or intended to leave their property to appellant.

In determining whether this state of the evidence made it incumbent upon the trial court to find that the oral agreement was consummated, various considerations are to be invoked. In the first place, the supreme court has

said several times that evidence of oral admissions against interest made by one whose lips are sealed in death is the weakest kind of evidence that could be produced, and that "It is not stating it too strongly to say that evidence so given under such circumstances must appear to any court to be in its nature the weakest and most unsatisfactory" (*Estate of Emerson,* 175 Cal. 724 [167 Pac. 149], and cases cited). If the evidence in the record which is opposed to the contested finding is to be considered in so unfavorable a light, what is to be said of the fact that Hunt was not called as a witness? He was the only living person who could have told of the final agreement between himself and the Troys, if any there was, affecting the future welfare of appellant. The failure to produce his testimony casts the gravest suspicion upon appellant's case. [3] It is to be presumed under subdivision 5 of section 1963 of the Code of Civil Procedure, "That evidence willfully suppressed would be adverse if produced," and it has been determined that this factor may be considered wherever it applies, in passing upon the question whether there is evidence to support a particular finding of fact (*Estate of Thomas,* 140 Cal. 397 [73 Pac. 1059]). And this court said in a late case, in which a disputable presumption was alone looked to as sufficient support for a finding of fact: "It is contended by appellant, however, that the presumption was overcome by testimony introduced by him. There was considerable testimony presented by appellant on the subject, it is true, but we cannot say that it was sufficient to outweigh the presumption. The solution of that question was within the peculiar and final province of the trial court, for the presumption on the one hand and the testimony opposed to it on the other presented but a conflict of evidence. The finding of the trial court on the subject is final. *French Bank* v. *Beard,* 54 Cal. 480" (*Fowler* v. *Enriquez,* 56 Cal. App. 107 [204 Pac. 854]). In the present case, under the presumption which must be indulged pursuant to the terms of subdivision 5, section 1963 of the Code of Civil Procedure it is as if the record disclosed testimony of Hunt actually opposed to that produced by appellant, not forgetting the weak and unsatisfactory character of the latter under the pronouncements of the su-

preme court already mentioned. We are satisfied that the disputed finding is supported by the evidence.

[4] It is contended by appellant that she was entitled to recover under the "contract" disclosed by the formal adoption papers, and this because of the use of the term "legitimate heir" in the petition for adoption. The contention cannot be upheld. The word "legitimate" added nothing to the word "heir," for legitimate means nothing more than lawful (5 Words and Phrases, 1st ed., p. 4090, tits. "Legitimate," "Legitimate Purpose," and see tit. "Legitimate Heirs"; 3 Words and Phrases, 2d ed., p. 88, tit. "Legitimate"); and "The heirs of a person are those whom the law appoints to succeed to his estate in case he dies without disposing of it by will" (*Wittenbrock v. Wheadon,* 128 Cal. 150 [79 Am. St. Rep. 32, 60 Pac. 664]). It is plain to us that the Troys, in using the term "legitimate heir" in the petition for adoption, intended only to put appellant in the same place in their family which a child of their blood would have occupied, or, as we have already said, they were merely employing the petition for the purpose directed by the law, that is, to show that appellant was to "be adopted and treated in all respects as [their] own lawful child should be treated" (Civ. Code, sec. 226).

Judgment affirmed.

Finlayson, P. J., and Craig, J., concurred.