[L. A. No. 19299. In Bank. Oct. 18, 1946.]

JENNIE A. LOHMAN, Appellant, v. THEODORE G. LOH-
MAN, Defendant; ZALLA LOHMAN, as Executrix,
etc., Respondent.

Freston & Files, H. R. Kelly, Sydney Wetzler and Bion B. Vogel for Appellant.

McLaughlin & McGinley and Howard D. Hanson for Respondent.

EDMONDS, J.—At the time of the death of Theodore G. Lohman, he had not paid the amounts specified in a property settlement agreement whose provisions were approved by the court and included in both the interlocutory and the final decree of divorce obtained by Jennie A. Lohman. His second wife, Zalla Lohman, as the executrix of his estate, successfully resisted a motion to enforce the decree, and the appeal is from the order denying relief.

The interlocutory decree of divorce was entered April 16, 1929. In accordance with the agreement of the parties, it required the immediate payment of $5,500 and an additional $10,000 in annual installments of $2,000 in 1930, $2,000 in 1931, and $6,000 in 1932. The court also awarded Jennie A. Lohman alimony at the rate of $150 per month. According to.

her affidavit in support of the motion, in 1932 Lohman wrote
to her as follows:

"The reason I am writing this to you is that you can use
this letter in the event I do not meet my obligation. I will
go on record and say you have *bin* very *considered* and used
good Judgement in not forceing payment on the last Note.
it would only have *ment* one result ~~thing~~ at the present time
we are doing the best we can hopeing a change will come soon*e*
at one time we imployed sixty-~~cre~~ ᵒʳᵉmore with a fair *£* profit
and now only twenty on one half time we have cut wages .
from top to bottom 20%. to keep the overhead down we took
a heav*ey* *lose* in 1931 and from all indication it will repeat
in 1932, I am not telling you this as a hard luck stor*ey* it is
simply telling you facts as the are, I have *bin* very weak in
some things but I can assure you I will play square with you
in a *fiancely* way, if you give me a chance."

The "indulgence" which Lohman requested in this letter
was accorded to him, the affiant stated, because she did not
desire to harass her former husband, but thereafter from
time to time she requested him to pay the amounts due to her.
In response to these requests, she was assured by Lohman that
"she would get her money" and he asked for further time
to make the payments. Legal proceedings were not com-
menced because of her confidence that her former husband
would respect his obligation.

Lohman died in 1944, the affidavit continued, without mak-
ing any provision for the payment of the amounts due under
the provisions of the decree, although he left a sizeable estate,
including a large wholesale plumbing establishment with ade-
quate funds to pay his debts. He had not paid the $2,000 due
in 1931 nor the $6,000 payable the following year and since
February, 1935, had paid only $125 a month on account of
alimony. Concerning the monthly payments, Lohman had
advised her that he could afford to pay only $125 and when-
ever she remonstrated about the amount, he told her that it
would be made up later. Since the divorce she has been in poor
health and not in a position to enter into any acrimonious
controversy with her former husband. Ultimately, she as-
sumed, her husband would meet his obligation.

The only facts stated by the executrix in an affidavit filed
in opposition to the motion are that at all times since the
entry of the interlocutory decree, Lohman resided in the city

of Los Angeles; Jennie A. Lohman knew of his address and whereabouts during all of that time, and also knew that he was engaged in business in the county of Los Angeles and was solvent.

The appellant contends that in denying the motion, the trial judge abused his discretion because her course of conduct under the circumstances was within well sanctioned and approved principles. In any event, she asserts, the right to a writ of execution for alimony due within five years prior to the date of Lohman's death is not subject to judicial discretion. The position of the executrix is that the affidavit of Jennie A. Lohman does not show that she used due diligence to collect the amounts awarded to her by the terms of the decree in her favor. Other points urged in support of the ruling are that section 1880(3) of the Code of Civil Procedure applies to a proceeding for the issuance of an execution, that the appellant is precluded from giving evidence upon any claims or demand against the estate; that the notice of motion is fatally defective in that it failed to state the ground upon which the motion was to be made; and that the trial court did not abuse its discretion in ruling adversely to the appellant.

Section 685 of the Code of Civil Procedure provides: "In all cases the judgment may be enforced or carried into execution after the lapse of five years from the date of its entry, by leave of the court, upon motion, and after due notice to the judgment debtor accompanied by an affidavit or affidavits setting forth the reasons for failure to proceed in compliance with the provisions of section 681 of this code. The failure to set forth such reasons as shall, in the discretion of the court, be sufficient, shall be ground for the denial of the motion." Under this statute the court may grant a judgment creditor leave to enforce his judgment by presenting a claim against the debtor's estate and by bringing an action thereon if the claim is rejected. (*Saunders* v. *Simms*, 183 Cal. 167 [190 P. 806]; *Bank of America* v. *Katz*, 45 Cal.App.2d 138 [113 P.2d 759]; *Pacific Gas & Elec. Co.* v. *Elks Duck Club*, 39 Cal.App.2d 562 [103 P.2d 1030].) But such an order is subject to the same rules applicable to one which authorizes the issuance of execution more than five years after judgment was entered. It may only be made if, during the five years following entry of judgment, the execution creditor exercised due diligence in locating and levying upon property owned by the debtor, or in following available information to the point

where a reasonable person would conclude that there was no property subject to levy within that time. ▮ And even if the court is satisfied as to the diligence of the creditor in this respect, it may deny its process if the debtor shows circumstances occurring subsequent to the 5-year period upon which, in the exercise of a sound discretion, it should conclude that the creditor is not now entitled to collect his judgment. (*Butcher* v. *Brouwer*, 21 Cal.2d 354 [132 P.2d 205]; *Beccuti* v. *Colombo Baking Co.*, 21 Cal.2d 360 [132 P.2d 207]; *Hatch* v. *Calkins*, 21 Cal.2d 364 [132 P.2d 210].)

▮ Upon the issue of due diligence, the appellant relies upon certain conversations which she claims to have had with her former husband and other matters assertedly occurring before his death. Assuming that section 1880(3) of the Code of Civil Procedure, which limits the testimony of a party to an action or proceeding brought against an executor, does not make those statements in her affidavit inadmissible, they constitute the weakest and most unsatisfactory of all kinds of evidence. (*Estate of Emerson*, 175 Cal. 724 [167 P. 149]; *Corison* v. *Williams*, 58 Cal.App. 282 [208 P. 331].) As against that affidavit, the counter-showing of the executrix cast doubt upon practically every material fact asserted by the appellant, and her claims in regard to the installment due in 1932 are directly at variance with the letter written by Mr. Lohman upon which she relies. ▮ Moreover, a trial judge is not required to accept as true the sworn testimony of a witness, even in the absence of evidence directly contradicting it, and this rule applies to an affidavit. (*Berg* v. *Journeymen Plumbers etc. Union*, 5 Cal.App.2d 582 [42 P.2d 1091].)

▮ By the property settlement agreement, the appellant was given a lien upon stock having a value of $20,000. She does not claim that she was ignorant of the value of the property owned by Lohman or of his ability to make payments to her. At all times, it fairly may be inferred from her affidavit and the counteraffidavit of Zalla Lohman, she knew that payments of the sums due to her might be enforced by legal action. That course was not taken, she said, because of her confidence in her former husband and her desire not to harass him. But if she chose, for more than five years, to rely upon his good intentions, as he expressed them to her, she cannot now say that she used the diligence which the law requires of her in the protection of her legal rights.

▮ But the right to enforce the payment of amounts due

not more than five years before the date upon which the motion was made rests upon different principles. Section 681 of the Code of Civil Procedure provides: "The party in whose favor judgment is given may, at any time within five years after the entry thereof, have a writ of execution issued for its enforcement." In 1863, before the enactment of this section, it was held that the statute of limitations runs upon a judgment payable in installments from the date each installment becomes due. (*DeUprey* v. *DeUprey*, 23 Cal. 352.) This principle was later applied in construing the code section, and it was held that the creditor is entitled, as a matter of right, to execution upon such a judgment for all amounts which have accrued within five years from the date of the application therefor. (*Gaston* v. *Gaston*, 114 Cal. 542 [46 P. 609, 55 Am.St.Rep. 786].) These decisions were followed in *Cochrane* v. *Cochrane*, 57 Cal.App.2d 937 [135 P.2d 714], and the statement in *Shields* v. *Superior Court*, 138 Cal.App. 151 [31 P.2d 1045], to the effect that execution may not issue as a matter of right upon installments accruing within five years is disapproved.

Although issuance of execution upon a judgment requiring monthly payments may be denied upon equitable grounds, proof that the installments have accrued within five years establishes a prima facie right to execution and the burden is cast upon the judgment debtor to establish facts justifying an order denying the writ. (*Cochrane* v. *Cochrane*, *supra*.) In the present case, the executrix did not deny the allegations of Jennie A. Lohman as to the amount of indebtedness upon the judgment, nor was there any suggestion of a change of circumstances after the date of the final decree which would make it inequitable for alimony to be exacted. The entire opposition to the motion was based upon the delay in enforcing the provisions of the judgment notwithstanding the creditor's knowledge that her former husband "was engaged in business in the County of Los Angeles and was solvent."

The affidavits, therefore, do not directly present an issue as to whether Lohman, at the time of his death, had paid all amounts required by the judgment against him. The executrix does not take the position that the trial judge might have found from the evidence that there is nothing now unpaid. On the contrary, she impliedly admits that all, or a substantial part, of the amount claimed by Jennie A. Lohman has

not been paid. The defense is that the divorced wife did not act diligently to collect the amount awarded to her; also, that there is no one other than herself who now can prove the amount of her claim. "It may be," says the executrix in her brief, "that appellant's affidavit is correct in all details, but there is no one other than appellant who knows this, and the point is that she lost her right to give evidence on the matter by delaying until after the decedent's death."

The effect of the letter written by Lohman should also be considered in connection with the rights of the judgment creditor under the provisions of section 681 of the Code of Civil Procedure. If it be assumed that the statute, in effect, is one of limitation, and the letter, which was written in 1932, is sufficient to estop his executor from pleading its bar, such an estoppel only operates to start the time running again from the date of his acknowledgment of the debt. Under that theory the unqualified right to execution expired in April, 1937, and as there is no evidence that Lohman later acknowledged the obligation, the appellant may, therefore, have execution for amounts accruing before 1939 only by complying with the requirements of section 685 of the Code of Civil Procedure.

As to the point that the notice of motion is fatally defective in that it failed to state any grounds upon which the motion was to be made, the statutory requirement in that regard is for the benefit of the opposing party. Being for his benefit he may, of course, waive its provisions. By failing to object to the hearing of the motion at the time it was noticed to be heard, the executrix impliedly waived any defect in the notice in this regard. (*Hecq* v. *Conner*, 203 Cal. 504 [265 P. 180]; *Mallory* v. *See*, 129 Cal. 356 [61 P. 1123]; *Barron* v. *Deleval*, 58 Cal. 95; *Bonfield* v. *Bonfield*, 71 Cal.App. 705 [236 P. 162].) Furthermore, the affidavit in support of the motion set forth certain facts upon which the motion was based, and sufficiently apprised the executrix of the grounds upon which the appellant relied for relief. (*Hecq* v. *Conner*, *supra*; *Savage* v. *Smith*, 170 Cal. 472 [150 P. 353]; *Reher* v. *Reed*, 166 Cal. 525 [137 P. 263, Ann.Cas. 1915C 737]; *Fink & Schindler Co.* v. *Gavros*, 72 Cal.App. 688 [237 P. 1083].)

The contention of the executrix that the trial court properly denied the motion because, under section 1880(3) of the Code of Civil Procedure the appellant cannot give testimony against the estate, is also without merit. The difficulty

of proof does not bar the right to maintain a legal proceeding and a court may not rest a decision upon an assumption concerning the nature of the evidence which will be proffered upon a hearing. The record does not show that the appellant must rely upon her own testimony to prove her claim and the provisions of section 1880 may be waived by an executrix. (*Deacon* v. *Bryans,* 212 Cal. 87 [298 P. 30]; *McClenahan* v. *Keyes,* 188 Cal. 574 [206 P. 454]; *Kinley* v. *Largent,* 187 Cal. 71 [200 P. 937]; *Cahill* v. *Goecke,* 10 Cal.App.2d 279 [51 P.2d 905].) ▮▮▮ And the motion authorized by section 685 of the Code of Civil Procedure is not a proceeding within the meaning of section 1880(3) of the same code. (*Tolle* v. *Doak,* 12 Cal.App.2d 195 [55 P.2d 542].)

The order is reversed with directions to the trial court to enter an order authorizing Jennie A. Lohman to present a claim against the estate of Theodore G. Lohman for all amounts which accrued under the provisions of the decree in *Lohman* v. *Lohman* within five years prior to September 8, 1944, and to bring an action upon such claim in the event of its rejection.

Gibson, C. J., and Traynor, J., concurred.

CARTER, J.—Concurring and dissenting. I concur in the judgment of reversal and in that portion of the opinion of Mr. Justice Edmonds which directs the entry of an order authorizing the presentation of a claim against the estate of the deceased for the installments of alimony accruing within five years prior to the application of appellant to enforce the judgment in her favor, but I dissent from that portion of the opinion which purports to approve the order of the trial court denying leave to appellant to enforce the payments provided for in the decree which accrued prior to that time.

Mr. Justice Edmonds predicates the portion of his opinion, with which I disagree, on the assumption that there is a conflict in the evidence with reference to the diligence exercised by appellant, the judgment creditor, and that the most that can be said is, that even if the letter written by Lohman in 1932 was an acknowledgment, it was barred by the statute of limitation before the present action was commenced.

Section 685 of the Code of Civil Procedure quoted by Mr. Justice Edmonds requires nothing more than that the judgment creditor set forth by affidavit his ''reasons'' for failure

to execute the judgment before it is barred by the statute of limitation. The judgment creditor must make a showing of diligence in endeavoring to collect the judgment within five years of its entry in order to obtain leave of court for the issuance of a writ of execution thereafter, and the determination of that issue rests largely in the discretion of the trial court. (*Butcher* v. *Brouwer*, 21 Cal.2d 354 [132 P.2d 205] ; *Hatch* v. *Calkins*, 21 Cal.2d 364 [132 P.2d 210].) But whether or not diligence has been exercised depends upon the *circumstances.* It is not always necessary to show that an unsuccessful endeavor was made *to collect the judgment by execution, search for property and the like* within the five-year period. (See *Shields* v. *Shields*, 55 Cal.App.2d 579 [130 P.2d 982] ; *Passow* v. *Bell*, 27 Cal.App.2d 360 [81 P.2d 224] ; *Corcoran* v. *Duffy*, 18 Cal.App.2d 658 [64 P.2d 735] ; *Atkinson* v. *Atkinson*, 35 Cal.App.2d 705 [96 P.2d 824].)

In the instant case the circumstances presented by appellant stand uncontradicted by the executrix of decedent's estate. They are sufficient to show that appellant was diligent. The circumstances in the instant case were adequate justification for appellant's failure to attempt to collect the payments accruing under the judgment within five years after they became due, as it is undisputed that this failure was due to her reliance upon the statements and conduct of decedent set forth in her affidavit herein. Hence, under the circumstances she has shown the diligence required by section 685 of the Code of Civil Procedure. The facts relative to the conduct of her former husband which lulled appellant into a false sense of security and prevented her from having execution issued within the period of five years, stand uncontradicted. The letter written by decedent in 1932 contains representations that decedent would pay if unmolested by appellant. In her affidavit appellant stated she accorded "indulgence" to decedent and was constantly "assured" that she "would get her money." Appellant had "confidence" that her "former husband" would respect his obligation and "reposed" confidence in him. In *Corcoran* v. *Duffy, supra,* the court affirmed the trial court, but the rule was clearly stated that conduct such as is present in the instant case excuses lack of attempts to collect the judgment, or that in the light of that circumstance, diligence is shown. The court said, speaking through Mr. Justice Spence, page 660: "It was conceded that nothing had been paid upon the judgment,

and while the affidavits were conflicting in part, respondent's affidavit showed that *he had not attempted to enforce said judgment by execution because of his reliance upon appellant's repeated promises to pay the same.* Appellant made no claim that he was prejudiced by the delay nor did he set forth any facts showing that it would be inequitable to permit 'the enforcement of the judgment.'' [Emphasis added.] Likewise in the instant case we have no showing of prejudice caused by the delay and have the repeated promises to pay.

In cases of estoppel to plead the statute of limitation, generally, it has been held that a mere agreement not to enforce an obligation will estop reliance on the statute where the defendant has accepted the fruits of the forbearance. In *Phillips* v. *Phillips,* 163 Cal. 530, 535 [127 P. 346], the court said: ''Aside from all questions regarding the consideration for the contract of forbearance and the sufficiency of its execution, defendant is prevented from setting up the bar of the statute of limitations upon clear principles of estoppel. She accepted the benefits of the contract. Her actions and those of her husband, as her agent, lulled the plaintiff into assumed security and caused him to postpone foreclosure until the expiration of the period mentioned in the agreement; consequently she cannot now pursue the advantage ordinarily available to a litigant under the statute of limitations.'' (See, to the same effect, *Quanchi* v. *Ben Lomond Wine Co.,* 17 Cal.App. 565 [120 P. 427]; 130 A.L.R. 8, 31.) And that a promise to pay inducing forbearance establishes an estoppel. (*Rapp* v. *Rapp,* 218 Cal. 505 [24 P.2d 161]; *Miles* v. *Bank of America etc. Assn.,* 17 Cal.App.2d 389 [62 P.2d 177]; *Roper* v. *Smith,* 45 Cal.App. 302 [187 P. 454]; 130 A.L.R. 8, 34.)

In the instant case the appellant's affidavit is uncontradicted. Reliance is not placed alone upon the letter from decedent to appellant, to which reference is made in her affidavit, on the theory, as intimated in the opinion of Mr. Justice Edmonds, that it is an acknowledgment tolling the time within which the judgment may be enforced. It is uncontradicted that decedent made repeated promises to make the payments provided for in the judgment and assured appellant she had nothing to worry about. Some of those statements were made orally and others were contained in the letter. Appellant relied upon them and the estoppel was established. The mere fact that the executrix asserted in her affidavit that appellant knew of the whereabouts of de-

cedent and that he was solvent does not, as expressed by Mr. Justice Edmonds, "cast doubt upon practically every material fact asserted by the appellant, and her claims in regard to the installment due in 1932 are directly at variance with the letter written by Mr. Lohman upon which she relies." Her knowledge of decedent's address and his solvency is wholly in harmony with her undenied affidavit that he misled her into believing that he would pay the judgment. Naturally she knew where he was inasmuch as they were in frequent contact. Rather than casting doubt on her affidavit, the executrix' statement merely completes the picture.

In view of the promises and assurances given by decedent to appellant, and the forbearance and considerate treatment which she accorded him as the result thereof, to now deny her the right to present her claim against decedent's estate for the payments which accrued under the judgment, and which were not paid, and to litigate such claim if rejected by the executrix, is, to my mind, a denial of that simple justice which is said to be "the hope of all who suffer—the dread of all who wrong."

Shenk, J., concurred.

SPENCE, J.—I dissent. This appeal presents the question of the propriety of the trial court's order denying to plaintiff the claimed right to enforce a divorce decree against the estate of her divorced husband following the death of the latter. The opinions of Mr. Justice Edmonds and Mr. Justice Carter express the view that the order of denial should be reversed but the authors of the opinions are not in accord as to the directions which should accompany such reversal. In my opinion, the order should be affirmed for the reasons hereinafter stated.

The divorce decree was entered in °1929 and enforcement was not sought until September, 1944, being more than 15 years after the entry of the decree and being at a time just prior to the expiration of the period allowed for the filing of claims against the estate. Plaintiff's motion was accompanied only by her own affidavit, which affidavit failed to show any diligence whatever in attempting to enforce the decree despite the fact that plaintiff claimed deliquencies on the property settlement installments dating back as far as 1931 and on the alimony installments back as far as 1935, being

claimed delinquencies of 13 and 9 years respectively. In her affidavit, plaintiff set forth a copy of a letter which she alleged the deceased had written in 1932, which letter tended to cast doubt on at least a portion of plaintiff's claims concerning the alleged delinquencies. Furthermore, to adopt the words of Mr. Justice Edmonds, "the counter-showing of the executrix cast doubt upon practically every material fact asserted by the appellant." Nevertheless, both the opinion of Mr. Justice Edmonds and the opinion of Mr. Justice Carter are necessarily predicated upon the assumption that the trial court was compelled to accept the unsatisfactory showing of plaintiff and to determine that the claimed delinquencies existed. I believe that such assumption is wholly erroneous and that the opinions based upon such assumption have the effect of usurping the fact-finding function of the trial court.

The Code of Civil Procedure provides "That evidence is to be estimated not only by its own intrinsic weight, but also according to the evidence which it is in the power of one side to produce and of the other to contradict . . ." (Code Civ. Proc., § 2061, subd. 6.) It has been said that this is "a mere commonplace rule." (10 Cal. Jur., § 359, p. 1140.) In the light of this rule, the trial court was entirely justified in giving little, if any, weight to the allegations in plaintiff's affidavit. That affidavit bore within itself the seeds of its own destruction, or at least partial destruction, and it was countered by an affidavit which probably contained as strong a showing as could be made by respondent following the death of the deceased. It is true that there was no direct contradiction by respondent of the existence of the claimed delinquencies, but it stretches one's credulity to believe that claimed delinquencies of such long duration would have been permitted to exist against a solvent debtor, known to plaintiff to have been conducting an established plumbing business throughout the years in the city of the parties' residence, without any attempt whatever having been made to enforce such delinquencies. The fact that there was no direct contradiction is immaterial, for it is well settled that the trial court is not always bound to accept the sworn testimony of a witness even though there may be no evidence directly contradicting such testimony (10 Cal.Jur., § 362, p. 1143); and the same is true when the sworn testimony is presented by affidavit. (*Berg* v. *Journeymen Plumbers etc. Union,* 5 Cal. App.2d 582 [42 P.2d 1091].) It therefore follows that the

trial court was not compelled to accept as true the allegations contained in plaintiff's affidavit, and that the order of denial was justified upon that ground.

There is a second ground, however, which I believe requires an affirmance of the order of the trial court denying enforcement of the 15-year-old divorce decree. We are not here dealing with the attempted enforcement of an ordinary money judgment but are dealing with the attempted enforcement of the anomalous type of decree entered by a court of equity in a divorce action, in the nature of a continuing alimony decree. The direct subject of attack on this appeal is an order of the same court of equity which entered the divorce decree, denying the enforcement of such decree. I am of the opinion that the trial court was at all times invested with discretion in determining whether any claimed delinquent installments accruing under such decree should be enforced in the divorce action by execution, and that since the death of the deceased husband the trial court was invested with discretion to determine whether leave should be granted to enforce the same by action against his estate. In any event, it seems clear that the trial court was invested with discretion where, as here, enforcement was not sought until more than five years after the entry of the judgment. If this be true, then in the absence of any showing of diligence on the part of plaintiff or, to follow the reasoning of Mr. Justice Edmonds, in the absence of any satisfactory showing of diligence such as the law requires, I believe that the trial court's order denying enforcement as to all claimed delinquencies should be affirmed, as it cannot be said that the trial court abused its discretion in making its order of denial.

Mr. Justice Edmonds and Mr. Justice Carter, together with those of my associates who have joined in their opinions, reach the conclusion that plaintiff was entitled as "a matter of right" to enforcement of the claimed delinquencies on installments of alimony which accrued within five years prior to the time that enforcement was sought. Assuming for the purpose of the discussion of this point only, that the trial court was compelled to find that such claimed delinquencies existed, I cannot agree that plaintiff was entitled to the enforcement of such delinquencies as "a matter of right" or that the case of *Shields* v. *Superior Court*, 138 Cal.App. 151 [31. P.2d 1045], should be disapproved. It seems to me to be wholly inconsistent to hold, as does the opinion of Mr.

Justice Edmonds, that such enforcement was "a matter of right" but that such enforcement could be denied "upon equitable grounds." Enforcement is either a matter of right or a matter of discretion, but it cannot be both.

The view that plaintiff was entitled as a matter of right to enforcement of the claimed delinquencies on installments of alimony which accrued within five years prior to the time that enforcement was sought is necessarily based upon the following propositions: (1) That the provisions of section 681 of the Code of Civil Procedure govern the manner of enforcement of continuing alimony decrees, and (2) that said provisions of section 681 apply to installments on continuing alimony decrees which accrue more than five years after the entry of the decree but within five years prior to the time that enforcement is sought. Whatever doubt may exist concerning the first proposition, there can be no doubt concerning the untenability of the second. The applicability of section 681 is limited by the express terms of the section to enforcement "at any time within five years after the entry" of the judgment, and the provisions of that section cannot be relied upon here to establish the claim that enforcement was a matter of right more than 15 years after such entry.

The cases of *DeUprey* v. *DeUprey*, 23 Cal. 352, and *Gaston* v. *Gaston*, 114 Cal. 542 [46 P. 609, 55 Am.St.Rep. 786], are cited by Mr. Justice Edmonds in support of the conclusion that such enforcement is a matter of right. The cited cases have no direct bearing on the problem before us. The DeUprey case dealt merely with the application of the statute of limitations in an independent action brought upon an installment judgment, and it was held that the statute of limitations did not start to run on each installment until such installment became due. It did not deal with enforcement by execution or with a motion made for leave to enforce in the action in equity in which the original judgment was entered. The Gaston case dealt merely with the duration of a lien expressly imposed by the court to secure the installment judgment. The installments on the judgment were regularly paid for 10 years and, upon default, the court in which the judgment had been entered ordered the sale of the property upon which the lien had been imposed. It was held that the lien had not expired two years after the entry of the judgment under the then provisions of section 671 of the Code of Civil Procedure, as the lien did not "derive its force from that section." The court

further repudiated the claim that because more than five years had elapsed after the entry of the judgment "the judgment ceased to be of binding force, and process *could not issue* under it." (Emphasis added.) It is therefore obvious that the court was there discussing the question of the power of the trial court to enforce the installment judgment after such lapse of time, and was not discussing the question of whether the matter of enforcement was one of right or of discretion. The conclusions reached in the DeUprey and Gaston cases are clearly correct, but they do not support the statement by Mr. Justice Edmonds that "the creditor is entitled, as a matter of right, to execution upon such a judgment for all amounts which have accrued within five years from the date of the application therefor."

It is doubtful whether section 681 of the Code of Civil Procedure, which deals with the enforcement of a judgment by execution and is claimed to make such enforcement a matter of right here, was ever intended to govern the enforcement of continuing alimony decrees. It would seem more logical to conclude, despite the assumption of the applicability of section 681 found in many of the cases dealing with continuing alimony decrees, that section 140 of the Civil Code, which provides that the trial court "may enforce" its continuing alimony decrees by any "remedy applicable," was intended to be the governing section. This question was discussed in *Shields* v. *Superior Court*, 138 Cal.App. 151 [31 P.2d 1045], but it was not necesary to decide the question there, and it is not necessary to decide it here, for the reason that in each case more than five years had elapsed after the entry of the decree before the motion for enforcement was made. It was there said on pages 153 and 154: "As we view the situation in the present case, it is unnecessary to discuss these conflicting contentions. If the position taken by respondents is correct, then the issuance of execution was at all times a matter within the discretion of the trial court. If, on the other hand, the position taken by petitioner is correct, the question of whether she was entitled to the issuance of a writ of execution was to be determined by the provisions of sections 681 and 685 of the Code of Civil Procedure. The provisions of said section 681, relating to judgments generally, entitled the judgment creditor to a writ of execution as a matter of right 'at any time *within five years after the entry*' of the judgment. Under said section 685, a writ of execution may be had upon a judgment only

'by leave of court' after the lapse of five years *from the date of its entry.'* The decree here was entered in 1924 and the motion for the issuance of execution was made in 1934, approximately ten years after the entry of the decree. Under either view, petitioner was not entitled to a writ of execution as a matter of right at the time the motion was made, but only in the discretion of the trial court. While it is true that a monthly installment had accrued and become payable each month during the five-year period immediately preceding the making of the motion for the issuance of execution and while it is further true, as pointed out by appellant, that the decree could not be modified as to sums already accrued (*Cummings* v. *Cummings,* 97 Cal.App. 144 [275 P. 245] ; *Bruton* v. *Tearle,* 117 Cal.App. 696 [4 P.2d 623], we are here dealing solely with the question of the *manner of enforcement* of the provisions of the decree. Assuming that sections 681 and 685 of the Code of Civil Procedure are the sections providing for the manner of enforcement as contended by petitioner, she was not entitled thereunder to the issuance of execution as a matter of right after the lapse of five years from the date of the *entry of the decree.* This view finds support in *Parker* v. *Parker,* 203 Cal. 787 [266 P. 283], and *Radonich* v. *Radonich,* 130 Cal.App. 250 [20 P.2d 51])."

It therefore appears immaterial here whether section 140 of the Civil Code is deemed to be the governing section or whether sections 681 and 685 of the Code of Civil Procedure are deemed to be the governing sections covering the manner of enforcement of continuing alimony decrees. The conclusion seems inescapable under either view that none of the cited sections makes enforcement of a continuing alimony judgment a matter of right after the lapse of five years from the date of the entry of such decree. In my opinion, at least after the lapse of such five-year period, the matter of enforcement of a continuing alimony decree is a matter which is committed to the sound discretion of the trial court, and an order of the trial court denying enforcement should not be reversed unless it clearly appears that there has been an abuse of such discretion. I am further of the opinion that when such enforcement is sought after the lapse of such 5-year period, and it is claimed the delinqencies have existed over a long period of years, the burden should be placed squarely upon the judgment creditor to make a clear and convincing showing concerning the existence of the delinquencies and of other facts

which would appeal to a court of equity in exercising its discretion with respect to enforcement.

The case of *Cochrane* v. *Cochrane*, 57 Cal.App.2d 937 [135 P.2d 714], cited by Mr. Justice Edmonds in support of his conclusions, lends little, if any, support thereto. The division in the court in that case was not clearly drawn upon the question of whether the matter of enforcement was a matter of right or a matter within the discretion of the trial court, but rather upon the question of where the burden rested to show facts which should be considered by the trial court in the exercise of its discretion. Furthermore, it appears in that case that the judgment debtor, who was still living, "made no counter-showing."

The case of *Corcoran* v. *Duffy*, 18 Cal.App.2d 658 [64 P.2d 735], cited by Mr. Justice Carter, is clearly distinguishable and lends no support to his conclusions in the instant case. There the trial court had exercised its discretion by ordering execution to issue, and the sole question discussed was that of diligence. The judgment debtor there was still living and he conceded that nothing had been paid on the judgment at any time. Moreover, it was shown by the judgment creditor's affidavit not only that execution had been returned unsatisfied within five years after the entry of judgment, but also that the judgment creditor had thereafter executed at various times three formal instruments entitled "Acknowledgment and Promise to Pay." In each of these, the judgment debtor acknowledged that he owed the amount of the judgment with interest and that he had paid nothing thereon; in each, he promised to pay the same without fixing any date for such payment; and in each, it was recited that "the undersigned gives this acknowledgment and promise in order that said indebtedness shall not be barred by any statute of limitations." The court there affirmed the order granting the motion and it stated at page 660: "The trial court's ruling upon the motion should not be disturbed in the absence of a showing of a clear abuse of discretion and we find no such showing in the present case." Likewise here I find no showing of an abuse of discretion and in the absence of such showing, the action of the trial court should be sustained.

In summary, I am of the view that the order of the trial court denying enforcement cannot properly be reversed: First, because any order of reversal, with or without directions, must necessarily usurp the fact-finding function of the

trial court with respect to the existence of the claimed delinquencies; and second, because any order of reversal, with or without directions, must necessarily not only usurp the fact-finding function of the trial court with respect to the allegations relating to diligence but must also substitute the discretion of this court for the discretion of the trial court in a case where no abuse of discretion on the part of the trial court has been shown.

With respect to the question of diligence, it must be recalled that no attempt was made to exercise the claimed right to enforcement until more than 15 years after the entry of the decree and at a time when the lips of the judgment debtor were sealed in death. According to plaintiff's allegations, delinquencies occurred within two years after the entry of the decree but no attempt was made to obtain enforcement before the lapse of the 5-year period. The only evidence purporting to corroborate in any manner the claims of plaintiff was the letter written by the judgment debtor in 1932, which related only to the situation at the time of writing, which was 12 years before enforcement was sought. Plaintiff strongly relies on that letter but that bit of evidence tends to cast doubt upon part of plaintiff's claims. Plaintiff's remaining allegation on the issue of diligence consisted of alleged conversations with the deceased, and I agree with Mr. Justice Edmonds that such evidence constitutes "the weakest and most unsatisfactory of all kinds of evidence." The trial court was not compelled to believe the latter allegations, more particularly in the light of the counter-showing of respondent, but even assuming the truth thereof, I further agree with Mr. Justice Edmonds where he says: "But if she chose, for more than five years, to rely upon his good intentions, as he expressed them to her, she cannot now say that she used the diligence which the law requires of her in the protection of her legal rights." It therefore appears that under any view of the evidence, it cannot be said here that the trial court abused its discretion in denying enforcement, and I do not believe that Mr. Justice Carter's conclusions can be reconciled with the recent decisions of this court in *Butcher* v. *Brouwer*, 21 Cal.2d 354 [132 P.2d 205]; *Beccuti* v. *Colombo Baking Co.*, 21 Cal.2d 360 [132 P.2d 207]; and *Hatch* v. *Calkins*, 21 Cal.2d 364 [132 P.2d 210].

In conclusion, I desire to state that I deem it most unfortunate that a majority of this court has reached the conclu-

sion that regardless of the time when a continuing alimony decree may have been entered, and regardless of whether the judgment creditor may have exercised any diligence in attempted enforcement, such judgment creditor is entitled as a matter of right to enforcement at any time of those installments which may have accrued within 5 years of the time when enforcement is sought. It is a matter of common knowledge that there are countless thousands of old continuing alimony decrees, many of which were entered during the boom era of the 1920's and many of which have never been modified. It is also a matter of common knowledge that we have been through a long period of depression followed by several years of disturbed conditions attributable to the war, and that there are many debtors, including those who have served in the armed forces, who have been unable during these disturbed times to make the full payments specified under such old decrees, or even to pay counsel to obtain modification. In some cases, the parties have in practical effect modified such decrees by oral understandings, express or implied, to pay and accept amounts smaller than those specified in decrees entered during earlier years. Actual modifications by court order of these old decrees, if now possible, could not affect accrued installments, but the question arises: "Should the judgment creditor be held to be entitled to execution *as a matter of right* on alleged delinquencies accruing during the five years immediately preceding the application for execution to issue?" To answer this question in the affirmative, as do the opinions of Mr. Justice Edmonds and Mr. Justice Carter, will undoubtedly do grave injustice in numerous cases and may spell financial ruin for many who are now struggling for economic rehabilitation. On the other hand, the rule enunciated in *Shields* v. *Superior Court, supra,* 138 Cal.App. 151, and recognized in many of the cases, would leave the matter of enforcement of continuing alimony decrees within the sound discretion of the trial court at all times and would place no undue burden upon the judgment creditor. In those cases in which it appears that the judgment debtor has died, I believe that the widest latitude should be allowed to the trial court in the exercise of its discretion, for it is obvious that it is ordinarily impossible for the representative of the deceased to make a full counter-showing with respect to payments made or with respect to reasons or understandings for nonpayment of, or partial payment on,

the accrued installments. In such cases, the probable prejudice, resulting from the delay in enforcement, is apparent.

For the reasons stated, I cannot join in the conclusion that the order of the trial court should be reversed but, on the contrary, I believe that the order denying enforcement should be affirmed.

Schauer, J., concurred.