[Civ. No. 18515. Second Dist., Div. Three. Dec. 10, 1951.]

LAWRENCE KLINKER, Appellant, v. MYRTLE NELL KLINKER et al., Respondents.

William J. Clark for Appellant.

Allan L. Leonard for Respondents.

SHINN, P. J.—On April 15, 1940, plaintiff-appellant Lawrence Klinker and his wife, Myrtle (defendant here), took title as joint tenants to a parcel of real property described as Lot 9 and the northerly 17.85 feet of Lot 10, Block 39, of the city of Huntington Park (described hereafter as Lot 9-10). Myrtle Klinker was adjudged mentally ill in December, 1941, and in 1948 defendant California Trust Company was appointed guardian of her estate. Plaintiff seeks to quiet title to Lot 9-10 in himself, on the theory that Myrtle coerced him to take title in joint tenancy rather than as his separate property. The court found there was no duress, the acts of plaintiff were of his own free will, and further, that any claim of plaintiff for equitable relief was barred by laches. Plaintiff appeals.

Many alleged errors are argued in the briefs, but the only one we need consider is whether the evidence was sufficient to support the findings that plaintiff voluntarily allowed title to lot 9-10 to be conveyed to himself and his wife as joint tenants.

Related to this question there was evidence of the following facts: From 1922 until April, 1940, plaintiff, his father and his brother Joe, conducted a partnership engaged in buying lots, building and selling houses. This partnership was dissolved in 1940, the father giving his interest to the two sons. The major assets of the partnership at that date were two adjacent parcels of real property located in the city of Huntington Park. These were Lot 9-10 (here involved), and Lot 8, and the south seven feet of Lot 7, in Block 39, of the

city of Huntington Park. In 1922, title to lot 9-10 was taken in the names of Charles J. Klinker, Cordia Klinker, husband and wife, Lawrence Klinker and Joe Henry Klinker, as joint tenants. In 1923, title to Lot 7-8 was taken in the names of C. J. Klinker, Cordia Klinker, Lawrence Klinker and Myrtle Klinker, his wife, and Joe Henry Klinker, as joint tenants. In 1940, when the partnership dissolved, title to both lots stood as originally vested. It was decided in 1940 that Joe should have Parcel 7-8 and Lawrence Parcel 9-10. To accomplish this, all five owners joined in a conveyance of Parcel 7-8 to Joe and his wife, Nina, as joint tenants, and a conveyance of Parcel 9-10 to Lawrence and his wife, Myrtle, as joint tenants.

In an effort to establish his claim of coercion and duress, plaintiff endeavored to prove that Myrtle had no title to an interest in Lot 7-8, but nevertheless refused to sign a deed in favor of Joe unless she was given a joint tenancy interest in Lot 9-10. Plaintiff offered the testimony of C. J. Klinker that he made a mistake in 1923 when he included Myrtle as a grantee when Lot 7-8 was acquired. Plaintiff also testified that Myrtle threatened to divorce him, charge him with fraud, assault him and slander him if he did not take Lot 9-10 in joint tenancy. The court found that Myrtle did have an interest in Lot 7-8, and that plaintiff's action in taking title to Lot 9-10 in joint tenancy was voluntary on his part and not the result of defendant's coercion. These findings are attacked as lacking support in the evidence.

Due to her mental condition, Myrtle was incapable of giving testimony. It was the duty of the court to closely scrutinize the testimony of plaintiff and C. J. Klinker, by which it was sought to deprive the estate of Myrtle of an interest in the property. Statements attributed to one who is dead are the weakest and most unsatisfactory kind of evidence. (*Lohman* v. *Lohman,* 29 Cal.2d 144, 149 [173 P.2d 657].) Testimony as to the acts and conduct of the incompetent, Myrtle, fall within the rule. In view of the interest of plaintiff's witnesses and of what could properly have been considered to be inherent improbabilities in their testimony, the court was not required to believe it. In *Blankman* v. *Vallejo,* 15 Cal. 638, at page 645, the court said: "We do not understand that the credulity of a Court must necessarily correspond with the vigor and positiveness with which a witness swears. A Court may reject the most positive testimony, though the witness be not discredited by direct

testimony impeaching him or contradicting his statements. The inherent improbability of a statement may deny to it all claims to belief.'' This is still the law. The deed was regular on its face and the burden was on plaintiff to convince the trier of fact that creation of the joint tenancy was not the result of his voluntary act. Plaintiff and his wife, as joint tenants, held title to Lot 7-8 for 17 years, and to Lot 9-10 for 8 years, before the wife's title was questioned. Acquiescence and inaction for these periods of time substantially refute the claims of mistake in including Myrtle as a grantee of Lot 7-8, and of duress in the exchange of Lot 7-8 for Lot 9-10. In the absence of satisfactory evidence to impeach defendant's title, the court properly determined that Myrtle did have an interest in Lot 7-8; that she reasonably requested that she receive an interest in Lot 9-10 if she were to give up the interest in Lot 7-8; and that plaintiff voluntarily agreed.

Inasmuch as the evidence supports the finding that Myrtle acquired a joint tenancy interest in Lot 9-10 by a deed given voluntarily, it is unnecessary to consider the defense and finding of laches.

The judgment is affirmed.

Wood (Parker), J., and Vallée, J., concurred.